MERHIGE, Senior District Judge:
Appellants Cal Worthington & Cal Worthington Dodge, Inc. (‘Worthington’’) and Debtors, a group of commonly owned automobile dealerships in the Claremont Auto Center (“Debtors”), appeal an order of the district court which reversed an order of the bankruptcy court compelling Appellee General Motors Corporation (“GM”) to accept assignment of Debtors’ franchise agreements to Worthington. GM has filed a cross-appeal regarding an issue upon which it was unsuccessful in the courts below. For the reasons which follow, we affirm.
I
FACTS AND PROCEDURAL HISTORY
Debtors operated Cadillac, Pontiac/GMC Truck, Ford, Isuzu and Hyundai dealerships at the Claremont Auto Center in Claremont, California. On or about November 7, 1994, Debtors ceased operating their automobile dealerships. On November 20, 1994, Debtors commenced a Chapter 11 bankrupt *1031 cy proceeding. On March 31, 1995, the bankruptcy court approved Worthington as the purchaser of the Debtors’ assets, including the dealer franchises. Applying California Vehicle Code § 11713.3(e), which prohibits transfer of an automobile franchise agreement without the consent of the manufacturer whose consent may not be unreasonably withheld, the bankruptcy court required the consent of GM prior to ordering the assignment of the franchise agreements to Worthington. GM refused to consent to the assignment, prompting Debtors to seek an order compelling the assignment. After hearing argument, the bankruptcy court entered an order finding that GM had unreasonably withheld consent within the meaning of Cal.Veh.Code § 11713.3(e). The bankruptcy court therefore ordered GM to accept the assignment of Debtors’ GM Dealer and Service Agreements (the “GM Dealer Agreements”) from the Debtors to Worthington. The bankruptcy court also ruled that pursuant to § 365(b)(2)(D) of the Bankruptcy Code (the “Code”), Debtors were not required to cure any nonmonetary defaults in order to assume and assign their contracts to Worthington.
GM appealed the order compelling assignment of the GM Dealer Agreements. The district court found that the bankruptcy court had misapplied Cal.Veh.Code § 11713.3(e) and reversed the bankruptcy court’s order as it applied to GM. In re Claremont Acquisition Corp., 186 B.R. 977, 986-87. (C.D.Cal.1995). The district court affirmed, however, the bankruptcy court’s interpretation of § 365(b)(2)(D). Id. at 989-90. Worthington and Debtors now appeal the district court’s decision with respect to the application of § 11713.3(e) to the assignment. GM has filed a cross-appeal challenging the district court’s interpretation of § 365(b)(2)(D).
II
STANDARD OF REVIEW
This court reviews the district court’s decision on an appeal from a bankruptcy court de novo. Federal Deposit Insurance Corp. v. Daily (In re Daily), 47 F.3d 365, 367 (9th Cir.1995); Siragusa v. Siragusa (In re Siragusa), 27 F.3d 406, 407 (9th Cir. 1994) (per curiam). The court independently reviews the bankruptcy court’s decision and need not give deference to the district court’s determinations. Robertson v. Peters (In re Weisman), 5 F.3d 417, 419 (9th Cir.1993). We review the bankruptcy court’s interpretation of applicable law de novo, and the findings of fact for clear error. 550 West Ina Road Trust v. Tucker (In re Tucker), 989 F.2d 328, 330 (9th Cir.1993).
Ill
DISCUSSION
A. Assignment of the GM Dealer Agreements
California law restricts an automobile franchisee’s ability to assign the franchise without the consent of the manufacturer. Section 11713.3 of the California Vehicle Code provides:
It is unlawful and a violation of this code for any manufacturer, manufacturer branch, distributor, or distributor branch licensed under this code to do any of the following:
(e) To prevent, or attempt to prevent, a dealer from receiving fair and reasonable compensation for the value of the franchised business. There shall be no transfer or assignment of the dealer’s franchise without the consent of the manufacturer or distributor, which consent shall not be unreasonably withheld.
Cal.Veh.Code § 11713.3.
The bankruptcy court held that § 11713.3(e) applied to the assignment of the GM Dealer Agreements to Worthington.[1] *1032 On appeal, Worthington argues that the bankruptcy court erred in applying this statute because § 365(f)(1) of the Code does not permit courts to look to state laws prohibiting the assignment of executory contracts. 11 U.S.C. § 365(f)(1)- Worthington argues that the bankruptcy court should not have inquired whether GM’s refusal to consent was “reasonable” under California law, but should have instead inquired whether Worthington had given GM “adequate assurance of future performance” as required by § 365(f)(2)(B). 11 U.S.C. § 365(f)(2)(B).[2]
Federal courts have struggled with interpreting the Bankruptcy Code provisions governing the assignment of executory contracts. Section 365(f)(1) of the Code provides a general rule which permits a trustee in bankruptcy to assign an executory contract:
Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection [requiring adequate assurance of future performance].
11 U.S.C. § 365(f)(1). Subsection (c) of § 365 contains an important exception to this assignability rule:
The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties.
11 U.S.C. § 365(c)(1)(A).
Section 365(f)(1) appears to authorize a trustee to assign an executory contract, notwithstanding any contrary provision in the contract or in applicable law, provided that adequate assurance of future performance by the assignee is provided. Section 365(f)(1), explicitly states, however, that it applies except as provided in subsection (c) of § 365. Subsection (c), in turn, prohibits an assignment of an executory contract if applicable law excuses the non-debtor party from accepting performance from the assignee. What § 365(f)(1) appears to give, § 365(c)(1)(A) seems to take away.
Recently, in In re CFLC, 89 F.3d 673 (9th Cir.1996), this court recognized the apparent conflict between subsections (f) and (c), and noted that this conflict has lead to two different constructions of § 365 and the meaning of the phrase “applicable law” in both subsections. Id. at 676-77 (comparing In re Pioneer Ford Sales, 729 F.2d 27, 29 (1st Cir. 1984), with Rieser v. Dayton Country Club Co. (In re Magness), 972 F.2d 689, 695 (6th Cir.1992)). The CFLC court did not find it necessary to resolve this conflict, however, because assignment of the patent at issue in that ease was barred under either construction of the statute. Likewise, in the instant case, we find it unnecessary to address this matter because resolution of the conflict will not result in the assignment of the GM Dealer Agreements. Instead, we find that the issue raised by GM’s cross-appeal, regarding the proper interpretation of § 365(b)(2)(D), is dispositive of this appeal.
IV
GENERAL MOTORS’ CROSS-APPEAL
A. Background
On or about November 7, 1994, Debtors ceased operating their automobile dealer *1033 ships. The bankruptcy cases were not filed until November 20, 1994. The GM Dealer Agreements provided that GM may terminate the franchise for the failure to operate the business for seven consecutive business days.[3] Debtors’ failure to operate the dealership for two weeks preceding the bankruptcy filing constituted a nonmonetary default. Moreover, this default is a “historical fact” and, by definition, cannot be cured. See Lee West Enterprises, 179 B.R. 204, 208 (Bankr.C.D.Cal.1995).
In general, a debtor must cure all defaults, both monetary and nonmonetary, prior to the assumption and assignment of an executory contract. 11 U.S.C. § 365(b)(1). However, § 365(b)(2) sets forth an exclusive list of the monetary and nonmonetary breaches that a debtor need not cure before assuming and assigning a contract. 11 U.S.C. § 365(b)(2)(A)-(D). Worthington argued below that, pursuant to subsection (D) of § 365(b)(2), its default does not preclude assignment of the GM Dealer Agreements. The bankruptcy court agreed with Worthington and held that § 365(b)(2)(D) relieved Debtors of their obligation to cure their default. In its cross-appeal, GM contends that subsection (D) does not apply to this case, and that Debtors’ incurable nonmonetary default-the failure to operate the dealerships-precludes assignment of the GM Dealer Agreements.
B. Construction of § 365(b)(2)(D)
Section 365(b)(2) of the Code provides: Paragraph (1) of this subsection [imposing the requirement of curing defaults prior to assumption and assignment] does not apply to a default that is a breach of a provision relating to—
(D) the satisfaction of any penalty rate or provision relating to a default arising from any failure by the debtor to perform non-monetary obligations under the executory contract or unexpired lease.
11 U.S.C. § 365(b)(2)(D). Both GM and Worthington argue that the language of subsection (D) is unambiguous, but are at opposite poles as to its meaning. Worthington asserts that under subsection (D), it is not required to cure nonmonetary defaults. GM, on the other hand, reads subsection (D) as stating that, in curing defaults concerning nonmonetary obligations, the Debtor does not have to cure any penalties arising from a nonmonetary default.
The bankruptcy court adopted Worthington’s construction of subsection (D). Accordingly, the court held that Worthington’s failure to operate the dealerships was a breach of a “provision relating to a default arising from [a] failure of the debtor to perform [a] nonmonetary obligation,” which, according to subsection (D), was a default that did not have to be cured before assumption and assignment. We review the bankruptcy court’s construction of the statute de novo. Tucker, 989 F.2d at 330.
The difference between the parties’ interpretations of § 365(b)(2)(D) centers on the effect of the word “or” in subsection (D). Worthington argues that the word “or” operates to create two distinct and independent exceptions to the cure requirements of paragraph (1). Worthington apparently reasons that the clause preceding the word “or” excepts “satisfaction of any penalty rate” from the cure requirements, and that the clause following “or” is a catch-all provision excepting from cure any “nonmonetary obligations.”
GM disagrees with this interpretation of the statute. GM argues that the word “penalty” in subsection (D) modifies both “rate” and “provision.” Because the provision of the GM Dealer Agreement at issue in this case is not a penalty provision, ie., a liquidated damage provision, GM contends that *1034 the subsection (D) exception does not apply and the GM Dealer Agreements may not be assigned.
We find the construction offered by GM to be the more reasonable interpretation of the statute. A proper reading of subsection (D) requires that the adjective “penalty” modify both the words “rate” and “provision,” not just the word “rate.” Furthermore, like the word “penalty,” the word “satisfaction” must also define both “rate” and “provision.” Stated differently, subsection (D) provides an exception from cure for satisfaction of “penalty rates” and “penalty provisions.” When construed in this manner, the clause following the word “or” is not a catchall exception to paragraph (1), but instead an exception" concerning those provisions of a contract which impose a penalty for a debt- or’s failure to perform a nonmonetary obligation.
The proper construction of § 365(b)(2)(D) is readily apparent upon consideration of how the statute would read if the word “or” connected two distinct exceptions, as Worthington suggests. If this were the case, one should be able to delete the first clause, and the statute would still make sense. The statute would read as follows:
Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to — (D) ... provision relating to a default arising from any failure by the debtor to perform nonmonetary obligations under the executory contract or unexpired lease.
This construction of the section is both grammatically incorrect and nonsensical. The more logical construction of subsection (D) would have the words “satisfaction” and “penalty” relate to both “rate” and “provision.” Under this construction, the statute reads as follows:
Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to — (D) the satisfaction of any penalty rate or [the satisfaction of any penalty ] provision relating to a default arising from any failure of the Debtor to perform nonmonetary obligations under an executory contract of unexpired lease.
Unlike Worthington’s construction, this construction is grammatically correct.
GM’s interpretation of § 365(b)(2)(D) is further supported by consideration of the general structure of § 365 which suggests that Congress intended subsection (D) to address a single issue: the payment of penalties. In each instance that Congress added a separate or independent exception to § 365(b)(1), it created a separate subclause in § 365(b)(2). The bankruptcy court’s interpretation, however, requires a deviation from that general construction principle, as it results in a single subclause containing two completely different and unrelated exceptions. Furthermore, if subsection (D) is a catch-all provision, as Worthington contends, then subsections (A) through (C) of § 365(b)(2) would be superfluous, as they would be encompassed by subsection (D). Conversely, applying the terms “satisfaction” and “penalty” to both clauses in subsection (D) unifies the single provision. The first clause addresses penalty rates which are commonly imposed where a debtor’s breach was monetary in nature. The second clause addresses the payment of penalties under liquidated damage provisions where the debt- or’s breach was nonmonetary in nature.
Finally, the limited legislative history of § 365(b)(2)(D) supports GM’s construction of the section and suggests that Congress intended only to relieve debtors of the obligation to pay penalties; The House Report to the Bankruptcy Reform Act provides:
[Sjection 365(b) is clarified to provide that when sought by a debtor, a lease can be cured at a nondefault rate (i.e., it would not need to pay penalty rates).
5 U.S. Congressional & Administrative News at 3357 (1994) (H.R. No. 103-835 (1994))(parenthetical in original). By only referring to the payment of penalties, this legislative history lends weight to GM’s construction of subsection (D).
Under the interpretation we adopt today, the § 365(b)(2)(D) exception does not apply to Debtors’ default. Debtors’ failure to operate the franchises for seven consecutive days is not a default of a contractual provision relating to the satisfaction of a penalty rate or the payment of a penalty. Accord *1035 ingly, Debtors’ obligation to cure their default is not excused. Because Debtors are unable to now cure their default, the GM Dealer Agreements may not be assumed and assigned.
V
CONCLUSION
We find that the bankruptcy court erred in its interpretation of § 365(b)(2)(D), and that this section does not relieve Debtors of their obligation to cure their default. Because this default cannot now be cured, the GM Dealer Agreements cannot be assumed and assigned under 11 U.S.C. § 365(b). The decision of the district court is therefore
AFFIRMED.

. Although it is technically more accurate to speak of the assignment of a parly’s rights under a contract and the delegation of a party’s duties, this opinion follows the more common use of the term "assign” as encompassing both the assignment of rights and the delegation of duties. See Everex Systems, Inc. v. Cadtrak Corp. (In re CFLC, Inc.), 89 F.3d 673, 676 n. 2 (9th Cir. 1996).

. Section 365(f)(2) provides:
The trustee may assign an executory contract or unexpired lease of the debtor only if—
(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
(B) adequate assurance of future performance by the assignee of such contract is provided, whether or not there has been a default in such contract or lease.
11 U.S.C. § 365(f)(2).

. Article 14.5 of the GM Dealer Agreement provided:
If [GM] learns that any of the following has occurred, it may terminate this Agreement by giving Dealer written notice of termination. Termination will be effective on the date specified in the notice. 14.5.3 — Failure of Dealer to conduct customary sales and service operations during customary business hours for seven consecutive business days.