In re:  B.U.M. INTERNATIONAL,
INC. Debtor.

Friedman Enterprises, Appellant,

v.

B.U.M. International, Inc., Appellee.

No. 99–55236.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 2000

Filed Oct. 13, 2000

Michael H. Weiss, Weiss Scolney Spees, LLP, Los Angeles, California, for the appellant.

Gary Owen Caris and Stephen Skacevic, Frandzel Share Robins & Bloom, L.C., Los Angeles, California, for the appellee.

---

Before: BROWNING, T.G. NELSON, and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge:

Friedman Enterprises ("FE") appeals the district court's decision affirming the bankruptcy court's order denying FE's request for $916,827 in contingency fees pursuant to FE's employment agreement with Chapter 11 Debtor B.U.M. International, Inc. Because the bankruptcy court specifically reserved the right to approve all fees and costs of FE when it approved FE's employment, the fee structure had not been unconditionally approved under 11 U.S.C. § 328. Accordingly, the court was entitled to review under 11 U.S.C. § 330 the reasonableness of the requested fees and the extent to which the bankruptcy estate had been benefitted by the services in question. We have jurisdiction under 28 U.S.C. § 158(d) and affirm the decision of the district court.

## I. Facts

Shortly after filing a Chapter 11 bankruptcy petition, Debtor B.U.M. filed with the bankruptcy court an application seeking to employ FE as a "financial and strategic consultant." The terms of the proposed employment were contained in an employment agreement, which provided for the payment of both a flat monthly fee of $7,500 plus expenses and certain contingent fees. As to the contingent fees, the agreement provided:

> FE shall also receive, simultaneous with the a) confirmation of a Plan of Reorganization, b) the closing of the sale of assets, and/or c) the funding of new debt and/or equity capital, fees, payable in cash, in accordance with the following schedule:
>
> a) 1.5% of the Face Value of all secured debt, unsecured debt and unsecured trade debt of the Company, less the aggregate of the [$7,500 monthly fees] paid to FE, for up to six months in aggregate....
>
> b) 5% of the fair market value of all consideration received by the Company (including secured and unsecured creditors and/or its shareholders for the sale of any assets or presently outstanding stock of the Company.) The 5% fee is not applicable to any inventory liquidations or any sales of product in the ordinary course of the business....

c) 7.5% of the fair market value of any capital raised by or for the Company to 1) acquire the existing trade debt and/or bank debt of the Company and/or 2) purchase newly issued debt or equity securities of the Company. . . .

. . . .

. . . FE shall receive the aforementioned fees regardless of the source of the investors that ultimately invest in the Company's assets, trade debt, and/or securities.

The bankruptcy court initially approved the application. Subsequently, the Unsecured Creditors' Committee filed an objection and requested a hearing to determine whether the compensation structure outlined in the application was reasonable and consistent with the market structure for similar services. The U.S. Trustee also objected to the employment application on the grounds that B.U.M. had not justified a $7,500 fee already paid to FE and that the application was devoid of any evidence that the $7,500 monthly fee was a reasonable amount to charge for the services provided. The Trustee also requested that any order approving the employment agreement should "provide a clear statement that the Court may review this engagement at the end of the process to determine if fees paid were reasonable and of some benefit to the estate and that said professional may be required to disgorge any unreasonable amounts."

The court conducted a hearing on the objections and orally approved the employment application. Ms. Sokol, an attorney, appeared on behalf of Debtor B.U.M. Mr. Friedman was also present at the hearing. Don Willenburg, the attorney for the Committee, asked the court for clarification of the order. The following exchange took place:

MR. WILLENBURG: . . . I simply want to clarify. We—also what this order had said. The United States Trustee requested that the order provide a clear statement that the Court may review this engagement at the end of the process to determine the fees paid were reasonable and a benefit to the estate, and that said professional may be required to disgorge any unreasonable amounts. Is it the ruling of this Court that that statement will be included in this order?

THE COURT: I think that's the law. I don't know that you need—if we need it, instead we should put that in your employment app—your employment order as well then, right? I think it applies to every professional employed under 327. I don't think it's necessary to put in. Does anybody have—does anybody doubt that? Does Mr. Friedman object to that? Not putting it in the order, but like that proposition of law. That I can review it at a later time. Yes.

MS. SOKOL: No, and his declaration states such. Your Honor my concern with Mr. Friedman coming in for employment is that at this point, he's set up a system for billing monthly as opposed to hourly as the other professionals have. Is that going to be a problem?

THE COURT: I guess we'll find out. Thanks.

About a month later, the bankruptcy court entered a written order approving FE's employment under the terms and conditions set forth in the application. The order also contained an additional proviso that "all fees and costs of Friedman are subject to Court approval."

After FE's employment application had been initially approved but while the objections were still pending, B.U.M. filed a *Motion for Approval of Retail License Agreement and Related Relief Including Assumption and Assignment of Leases and Sale of Personal Property Subject to and/or Free of Liens* ("the spinoff motion"). The spinoff motion was essentially an attempt to spin off B.U.M.'s retail operations into a new company called B.U.M. Retail Concepts. FE helped arrange the deal underlying the spinoff motion, and

submitted a declaration in support of it. The Unsecured Creditors' Committee and other creditors opposed the spinoff motion as a sweetheart deal that benefitted B.U.M.'s principal, Morton Forshpan, and presented questionable benefits and considerable risks to the bankruptcy estate and its creditors.

The bankruptcy judge rejected the spinoff motion because he found that the proposed spinoff suffered from inadequate capitalization and a lack of management expertise. Because of the apparent self-dealing in the spinoff motion on behalf of Forshpan, the bankruptcy court stated that it had "serious questions" about whether B.U.M. could adequately conduct the affairs of the estate as a debtor in possession, and issued an order to show cause why a Chapter 11 Trustee should not be appointed.

The Unsecured Creditors' Committee proposed a reorganization plan, which was amended several times in the following months. B.U.M. and FE opposed confirmation of the Committee's plan, and three weeks prior to the scheduled confirmation hearing date, B.U.M. filed a Motion for Order Authorizing Sale of Substantially All Property of the Estate Free and Clear of Liens ("the sale motion"), in which it sought to sell off the majority of its assets. In a declaration in opposition to the Committee's reorganization plan, Mr. Friedman "conclude[d], irrefutably, that the Sale contains *superior* economic benefit to the estate relative to the [Committee's] Plan." (Emphasis in original.) The bankruptcy court conducted a hearing. The sale motion was denied and the Committee's reorganization plan approved. In denying the sale motion, the court noted several serious defects with it, including a lack of evidence that there was an actual buyer who could guarantee that the transactions would proceed as agreed, a lack of evidence regarding the payment mechanism, and the fact that the sale motion had been brought at a very late date, resulting in a lack of notice to the creditors.

Shortly after the Unsecured Creditors' Committee's reorganization plan was approved, the court held a hearing on FE's application for $127,500 in monthly fees and $916,827 in contingency fees for its work in the B.U.M. bankruptcy case. The monthly fees were uncontested and approved by the court. However, the court rejected in its entirety the requested contingent fees. In so doing, the court conducted an 11 U.S.C. § 330 inquiry and determined that FE's services had not benefitted the estate. With regard to the spinoff motion, the court noted that it appeared to have been designed primarily to benefit Forshpan at the expense of the creditors by taking everything of value out of the estate, and spinning it into a new entity controlled by him. The court found that to whatever extent FE had participated in the spinoff motion, FE had failed to show that its services were necessary or provided a benefit to the estate.

The bankruptcy court also found that FE had failed to establish that its work on the sale motion was necessary or that it had conveyed a benefit to the estate. Instead, the court noted that the sale motion appeared to have been an attempt to derail the Unsecured Creditors' Committee's proposed reorganization plan, a plan that would have removed Forshpan as B.U.M.'s principal. The bankruptcy court also reiterated the reasons that it had rejected the motion-it had been brought late and was unsupported by evidence that it was a feasible transaction, much less a viable alternative to the Committee's plan.

FE appealed to the district court, which affirmed the bankruptcy court's denial of the contingency fees. FE filed a timely notice of appeal.

## II.   Standard of Review

This court independently reviews the bankruptcy court's decision and need not give deference to the district court's determinations. *See Worthington v. General Motors Corp. (In re Claremont Acqui-*

*sition Corp.),* 113 F.3d 1029, 1031 (9th Cir.1997); *Federal Deposit Insurance Corp. v. Daily (In re Daily),* 47 F.3d 365, 367 (9th Cir.1995). The bankruptcy court's interpretation of the applicable law is reviewed de novo, and its findings of fact are reviewed for clear error. *See In re Claremont Acquisition,* 113 F.3d at 1031. A bankruptcy court's decision on the amount of fees to be awarded is reviewed for an abuse of discretion. *See Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park–Helena Corp.),* 63 F.3d 877, 880 (9th Cir.1995).

### III.  Analysis

The outcome of this case turns upon the relationship between two different Bankruptcy Code provisions, 11 U.S.C. §§ 328 and 330.

#### A.  The Statutes

In pertinent part, 11 U.S.C. § 328, reads:

> Limitation on compensation of professional persons
>
> (a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 330 provides:

> Compensation of officers

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.
>
> (2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.
>
> (3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

**B.  Bankruptcy Court and FE's Employment Application**

■ There is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional's employment under 11 U.S.C. § 328. *See Pitrat v. Reimers (In re Reimers),* 972 F.2d 1127, 1128 (9th Cir.1992). In this case, however, the bankruptcy court had not unconditionally approved FE's employment application under § 328.

■ Neither § 328 nor § 330 were specifically referred to when FE submitted its application for employment or when the bankruptcy court ruled on the application. In the order approving the employment, the bankruptcy court specifically included the condition that "all fees and costs of Friedman are subject to Court approval." We conclude on this record that while the bankruptcy court may have *conditionally* approved FE's employment, it did not convey its complete approval under § 328. To the contrary, it specifically reserved the right to approve the fees. Even if the bankruptcy judge thought that such a reservation was unnecessary to keep the door open for court approval of the fees and costs, he nevertheless specifically and in writing put all interested parties on notice that all of FE's fees were subject to court approval down the road.

FE argues that in enacting § 328, Congress intended to remove some of the un-certainty attendant to the employment of professionals by the bankruptcy estate. That may be true, but in this case, FE was on notice that the bankruptcy court had not unconditionally approved the employment agreement's fee structure, but would subject FE's final fee application to a "reasonableness and benefit to the estate" review. That is quite different from the situation in *Reimers,* where the attorney's employment and fee structure were unconditionally approved, then reduced unexpectedly by the court.

FE cites *Donaldson Lufkin & Jenrette Sec. Corp. v. National Gypsum Co. (In re National Gypsum Co.),* 123 F.3d 861 (5th Cir.1997) to support its argument that the employment agreement was approved under § 328. In that case, the Fifth Circuit held that even though the bankruptcy court approved an employment application with the proviso that "[t]he Court retains the right to consider and approve the reasonableness and amount of DLJ's fees on both an interim and final basis," the application had been approved under 11 U.S.C. § 328 and therefore the court could not conduct an 11 U.S.C. § 330 inquiry upon the professional's application for fees. *National Gypsum,* 123 F.3d at 863. The *National Gypsum* court reasoned that the qualifying language in the order was simply intended by the bankruptcy court to "recit[e] its control of the compensation in the event of subsequent and unanticipated circumstances affecting the reasonableness of that agreed fee." *Id.* However, it is unclear why the bankruptcy court would have believed it was required to include the qualifying language in the order to reserve the right to make an 11 U.S.C. § 328 review for unforeseen circumstances. The plain language of § 328 already contemplates that a court may make such a review even if it approved the prior agreement; there would appear no reason to reserve power that is explicitly granted by the statute.[1] In any case, there was no

---

**1.**  Notwithstanding the Fifth Circuit's *National*  *Gypsum* decision, other courts have held that

evidence that the qualifying language in *National Gypsum* was offered in response to an objection about the reasonableness of the fees.

In this case, however, the U.S. Trustee and the Unsecured Creditors' Committee specifically objected to FE's fee structure, and the bankruptcy court responded by stating its belief that it retained control to conduct a "reasonableness and benefit to the estate" review of the fees. The bankruptcy court also included language in the employment order that conditioned employment upon a final review of the fees. Accordingly, the assumption made in *National Gypsum* about the purpose of the employment order's qualifying language-that it intended only to reserve jurisdiction to pass upon unanticipated circumstances-cannot be made in this case. It is clear from the record that the bankruptcy court intended to reserve for itself more than simply an "improvident circumstances" review under 11 U.S.C. § 328. It intended to reserve the power to conduct an 11 U.S.C. § 330 "reasonableness and benefit to the estate" review.

■ Although in this case the record clearly indicates that the employment agreement was *not* unconditionally approved under § 328, for future reference, we point out that the better practice would be for a bankruptcy court to accept or reject a proposed employment agreement, not to conditionally accept it subject to later review. That way, professionals would know exactly where they stood before undertaking the engagement.

### C. Review under 11 U.S.C. § 330

■ The bankruptcy court's determination under § 330 that FE's investment banking services did not benefit the estate is reviewed for clear error as a finding of fact, and its decision not to award FE the contingency fees is reviewed for an abuse of discretion. *See In re Claremont Acquisition*, 113 F.3d at 1031; *In re Park–Helena Corp.*, 63 F.3d at 880.

■ The bankruptcy judge determined that FE's services had not benefitted the bankruptcy estate because FE had obstructed the creditors' attempts to put through a reorganization plan. The court also found that the specific plans advanced by B.U.M. and FE were: 1) in the case of the spinoff motion, an attempt to strip B.U.M. of its most valuable assets in a sweetheart deal for Forshpan's benefit, and 2) in the case of the sale motion, an attempt to derail the impending reorganization plan by advancing a last-minute alternate plan of questionable viability.

FE claims that the sale motion was a benefit to the estate because the Unsecured Creditors' Committee recognized at one point that it was a better deal for the estate than its own reorganization plan. This statement is misleading. The sale motion *as presented by B.U.M. and FE* may have been a better deal, but as the bankruptcy court found, the sale motion was more blue sky than substance, and appeared to lack any substantial financial backing. Accordingly, the bankruptcy court determined that the sale motion had not benefitted the estate. Because FE actively opposed the reorganization plan that formed the basis for the contingent fees, it is hard to quarrel with the bankruptcy court's determination that FE's investment banking activities did not benefit the bankruptcy estate. The bankruptcy court's factual findings were not clearly erroneous.

similar qualifying language in an order leaves open the possibility of later 11 U.S.C. § 330 review. *See In re Northeast Express Reg'l Airlines, Inc.*, 235 B.R. 695, 699 (Bankr. D.Maine 1999) (court discussed *National Gypsum*, but found that language in the employment agreement at issue, "all fees and expenses shall remain subject to review and approval by this Court," effectively preserved the court's power to conduct an 11 U.S.C. § 330 review); *In re Olympic Marine Servs., Inc.*, 186 B.R. 651, 652, 654 (Bankr.E.D.Va. 1995) (order approving employment application and stating that any application for compensation would be "subject to further review of [the] court" did not limit review to improvidence inquiry under 11 U.S.C. § 328).

Although FE finds fault with the bankruptcy court for not awarding some lesser amount of contingent fees, there is no evidence that FE ever requested reduced fees. Moreover, the bankruptcy court found that FE's investment banking activities had not provided any benefit to the estate, but appeared instead to have been rendered for Forshpan's benefit at the expense of the bankruptcy estate's interests. An award of reduced fees would have been at odds with such a factual finding. Therefore, the bankruptcy court's decision to deny completely FE's contingent fee request was not an abuse of discretion.

### IV. Conclusion

Because we hold that the bankruptcy court was entitled to review FE's fee application under 11 U.S.C. § 330 and that the decision to deny the fees was not an abuse of discretion, we need not reach the parties' remaining arguments. The order of the bankruptcy court is

AFFIRMED.