UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: November 20, 2008                    Decided: January 6, 2009)

Docket No. 08-1721-bk

_____

IN RE: SMART WORLD TECHNOLOGIES, LLC,

*Debtor*,

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI,

*Plaintiff-Appellee*,

- v. -

OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

*Defendant-Appellant.*

_____

Before:

SACK and WESLEY, *Circuit Judges*, and KAHN, *District Judge*.[1]

Appeal from a judgment of the United States District Court for the Southern District of New York (Cedarbaum, *J.*) awarding Appellee $2,142,006.27 in fees and $73,981.18 in

_____

[1] The Honorable Lawrence E. Kahn, United States District Court for the Northern District of New York, sitting by designation.

expenses. We affirm, holding that the bankruptcy court's Retention Order was a pre-approval within the meaning of 11 U.S.C. § 328(a), and that no subsequent developments warranted modifying the terms of Appellee's retention.

———————

LAURENCE MAY, (Michele E. Cosenza, *of counsel*), Cole, Schotz, Meisel, Forman & Leonard, P.A., New York, NY, *for Appellant*.

J. ALEX KRESS, (Glenn D. Curving, *of counsel*, Kevin J. Larner, *on the brief*), Riker, Danzig, Scherer, Hyland & Perretti, LLP, Morristown, NJ, *pro se*.

WESLEY, *Circuit Judge*:

This appeal poses a question of first impression. How does a court determine whether a bankruptcy court has "pre-approved" a debtor's retention of a professional pursuant to 11 U.S.C. § 328(a)? In this case, we find that the bankruptcy court's order was a section 328(a) pre-approval, and that no later developments rendered that approval improvident, and therefore affirm the judgment of the United States District Court for the Southern District of New York (Cedarbaum, *J.*).

**BACKGROUND**

Between 1996 and 2000, Smart World Technologies, LLC, Freewwweb, LLC, and Smart World Communications, Inc. (collectively, "Smart World") provided free dial-up Internet service to subscribing customers. When it failed to generate a profit, Smart World filed for bankruptcy in 2000 and agreed to sell its subscriber list – its most valuable asset – to Juno Online Services, Inc. ("Juno") as part of the bankruptcy proceeding. Shortly after the United States Bankruptcy

Court for the Southern District of New York (Blackshear, *J.*) approved the sale of the subscriber list to Juno, Smart World alleged that Juno was undercounting the number of subscribers.

On August 16, 2000, Juno filed an adversary complaint seeking declaratory relief that its conduct was proper and its obligation to Smart World was limited only to paying for qualified subscribers. In response, Smart World's bankruptcy counsel began negotiating to retain Appellee, the law firm of Riker, Danzig, Scherer, Hyland & Perretti, LLP ("Riker Danzig"), to represent Smart World in the Juno litigation in an effort to maximize the sale price from Juno. These negotiations culminated in a contingency fee proposal memorialized in an October 31, 2000 letter from Riker Danzig to Smart World's bankruptcy counsel. Smart World then applied to the bankruptcy court for an order approving the retention of Riker Danzig as special litigation counsel "pursuant to 11 U.S.C. §§ 327 and 328," the sections of the Bankruptcy Code providing for pre-approval of compensation for debtors' counsel.

In response to several objections to the conditions of the retention, Riker Danzig agreed to modify the terms at a November 14, 2000 hearing before Judge Blackshear, informing the court that the amended terms were "basically worked out in the hallway before we were called." WorldCom, Smart World's largest creditor, told the court that its initial concern was that because it and other creditors were already involved in settlement negotiations with Juno, Riker Danzig might be positioned to reap a "huge windfall" if those negotiations culminated in a monetary settlement. However, it explained that the revised contingency fee proposal was "a nice compromise" because it provided an incentive for all parties to reach a quick resolution.

At the hearing, Judge Blackshear preliminarily approved this revised proposal orally from

the bench, stating that the "contingency . . . basically addresses the reasonableness . . . . If he's willing to take that chance, on success being paid and unsuccess not getting anything, that to me addresses the reasonableness of his fee . . . [and] I'm not going to review the time records of the individual merely because of the fact that he agreed to a contingency fee." Nonetheless, Judge Blackshear required Riker Danzig to submit a written fee application incorporating the modified terms. The following day, November 15, the terms were documented in a letter from James Rothschild, a lawyer at Riker Danzig, to Smart World's bankruptcy counsel, (the "Rothschild Letter"), which read as follows:

> This is to confirm the results of the Court hearing yesterday wherein my October 31, 2000 letter to you was slightly modified. As per the Agreement placed before the Honorable Cornelius Blackshear, Riker, Danzig, Sherer, Hyland & Perretti, LLP ("Riker Danzig") will handle disputes between the debtor and Juno Online Services ("Juno") on a contingent fee basis. Riker Danzig will take the case in consideration of the following payment terms: 1) Riker Danzig will be paid all expenses off of the top any recovery and, after payment of expenses, will receive 33-1/3% of the first $1,500,000 obtained from Juno[]; 2) Riker Danzig's share of funds in excess of $1,500,000 but less than $8 Million will be (a) 0% if the litigation lasts less than 6 months, (b) 10% if the litigation lasts from 6 months to 9 months, (c) 20% if the litigation lasts between 9 months and 12 months, (d) 37% if the litigation lasts more than 12 months; and 3) Riker Danzig will receive 37% of all funds received in excess of $8 Million. Finally, Riker Danzig's fee for any monies received after 18 months shall be 33 1/3%.

The following day, November 16, 2000, Judge Blackshear issued his Retention Order. Although the Order did not specifically cite 11 U.S.C. § 328, it authorized Smart World to retain Riker Danzig in connection with the Juno litigation and stated that all compensation "shall be fixed upon further application of this Court and shall be in accordance with the within application and the letter of James S. Rothschild, Jr., Esq., dated November 15, 2000, and annexed hereto and

made a part hereof."[2]

In early 2001, Juno informed Riker Danzig that it had reached a settlement with Smart World's creditors. However, at a February 2001 hearing, the bankruptcy court determined that a settlement had not actually been reached, but was sufficiently close at hand to grant Juno's request to stay the litigation. That stay remained in place for the next two years.

In May 2003, Juno and the creditors filed a joint motion to settle the adversary proceeding under a settlement plan in which Juno would pay $5.5 million to Smart World's creditors. Smart World opposed the settlement, arguing that it had not been able to value its claims against Juno without discovery, and that the creditors lacked standing to settle the proceeding over its objection. Although the bankruptcy court disagreed and approved the settlement, this Court reversed, holding that Smart World's creditors did not have standing to settle the adversary proceeding over the objections of the debtor-in-possession. *See In re Smart World Technologies, LLC*, 423 F.3d 166 (2d Cir. 2005) (hereinafter, "*Smart World I*").

Back in bankruptcy court, Smart World's creditors filed a plan of liquidation, which now included a $6.5 million settlement with Juno. Once again, Smart World – through Riker Danzig – objected to the proposed settlement, arguing that it continued to undervalue the claim by undercounting the number of subscribers. The bankruptcy court disagreed and confirmed the plan, including the settlement.

Riker Danzig then applied for a fee award of $2,320,959.02 plus expenses. After a

---

[2] Appellant notes that the letter was not actually annexed to the order.

hearing, the bankruptcy court (Peck, *J.*) found that Judge Blackshear had pre-approved Riker Danzig's fee pursuant to 11 U.S.C. § 328(a), which allows a court to alter a pre-approved fee only if its terms and conditions "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). However, Judge Peck found four events incapable of being anticipated: (1) the divergence of positions between Smart World and its creditors; (2) the fact that Riker Danzig took instructions directly from the officers and majority shareholders of Smart World; (3) the unusually prolonged litigation; and (4) the fact that Riker Danzig was an obstacle, not an asset, to the approval of the settlement. As a result, the bankruptcy court reduced Riker Danzig's award to $1,207,816.00 plus $78,489.18 in expenses.

On appeal to the district court, Judge Cedarbaum reversed in a thorough and thoughtful opinion. *See In re Smart World Technologies, LLC*, 383 B.R. 869 (S.D.N.Y. 2008) (hereinafter, "*Smart World II*"). The district court agreed with the bankruptcy court that the fee agreement was pre-approved under section 328, but disagreed that there had been any developments incapable of being anticipated. *Id.* at 877-78. The court distinguished between "unanticipated" events and events "not capable of being anticipated," noting that a court may set aside a pre-approved fee under section 328(a) only if the latter occurred. *Id.* at 877. The court held that divergent litigation positions were to be expected since a debtor and its creditors may very well disagree on matters in the course of a bankruptcy proceeding; that the length of the litigation was largely a product of the two-year stay imposed by the court and the successful appeal to the Second Circuit; and that the success of the appeal justified Riker Danzig's litigation strategy. *Id.*

at 877-78.  As a result, the district court reversed and ordered a fee award of $2,142,006.27 and $73,981.18 in expenses.[3]  *Id.* at 879.

**DISCUSSION**

In 1978, Congress amended the Bankruptcy Code in part to make it easier for debtors in bankruptcy to retain professionals for discrete matters.  *See* Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1978).  The Act "effect[ed] a significant departure from prior practice under the Bankruptcy Act in which professionals were entitled to reasonable compensation determined on a strictly *quantum merit* basis."  Collier on Bankruptcy ¶ 328.02 (Alan N. Resnik & Henry J. Sommer, eds., 15th ed. rev.).

Section 327(a) of the Code authorizes bankruptcy trustees, with court approval, to "employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons . . . to represent or assist the trustee in carrying out the trustee's duties."  11 U.S.C. § 327(a).  Sections 328 and 330 establish a two-tiered system for judicial review and approval of the terms of the professional's retention.  Section 330 authorizes the bankruptcy court to award the retained professional "reasonable compensation" based on an after-the-fact consideration of "the nature, the extent, and the value of such services, taking into account all relevant factors."  11 U.S.C. § 330(a).  However, section 328(a) permits a bankruptcy court to forgo a full post-hoc reasonableness inquiry if it pre-approves the "employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an

---

[3] Riker Danzig did not cross-appeal from that portion of the district court's judgment awarding it less in fees than it sought.

hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." *Id.* § 328(a). Where the court pre-approves the terms and conditions of the retention under section 328(a), its power to amend those terms is severely constrained. It may only "allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." *Id.* These two inquiries are mutually exclusive, as "[t]here is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional's employment under 11 U.S.C. § 328." *In re B.U.M. Int'l, Inc.*, 229 F.3d 824, 829 (9th Cir. 2000).

**I**

The first question is whether Judge Blackshear's Retention Order was a pre-approval under section 328(a). Like the bankruptcy and district courts, we conclude that it was.

Although this Court has never discussed what kind of a showing is required to deem a retention order a pre-approval within the meaning of 11 U.S.C. § 328(a), several of our sister circuits have. In *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253 (3d Cir. 1995), the Third Circuit held that the burden rests "on the applicant to ensure that the court notes explicitly the terms and conditions [of the retention] if the applicant expects them to be established at that early point." *Id.* at 262. The Ninth Circuit adopted a even stricter approach, holding that "[t]o ensure that § 328 governs the review of a professional's fees, a professional must invoke the section explicitly in the retention application." *In re Circle K Corp.*, 279 F.3d 669, 674 (9th Cir.

2002). In addition, the Ninth Circuit has required that the pre-approval be final, and not merely preliminary or conditional; retention orders reserving final substantive approval until after the representation concluded were not sufficiently definite to fall within the scope of section 328(a).[4] *See id.* at 673; *B.U.M.*, 229 F.3d at 830.

The Sixth Circuit rejected this approach as being "too constrictive" and adopted a "totality of the circumstances" test. *In re Airspect Air, Inc.*, 385 F.3d 915, 921-22 (6th Cir. 2004). The court noted that the Bankruptcy Code does not "mandate that the application specifically mention § 328 or that the court's approval order expressly and unambiguously state specific terms and conditions." *Id.* at 921. However, because a court cannot merely "infer[] § 328 pre-approval from the simple mention of a fee agreement in the debtor's motion for appointment," it must look at a multitude of factors, such as "whether the debtor's motion for appointment specifically requested fee pre-approval, whether the court's order assessed the reasonableness of the fee, and whether either the order or the motion expressly invoked § 328." *Id.* at 921-22.

We agree with the Sixth Circuit and hold that pre-approval of a fee agreement under 11 U.S.C. § 328(a) depends on the totality of the circumstances, including whether the professional's application, or the court's order, referenced section 328(a), and whether the court evaluated the propriety of the fee arrangement before granting final, and not merely preliminary,

---

[4] The order in *B.U.M.* provided that "all fees and costs . . . are subject to Court approval," 229 F.3d at 826, while the order in *Circle K* stated that "all fees . . . remain subject to subsequent Bankruptcy Court approval in a final fee application to be submitted to the Court," 279 F.3d at 673 (emphasis omitted).

approval.

Under the circumstances of this case, we have little difficulty finding that the bankruptcy court's Retention Order was a section 328(a) pre-approval. As an initial matter, Smart World's application expressly invoked section 328(a): "The Debtors wish to retain the law firm of Riker, Danzig, Scherer, Hyland & Perretti, LLP . . . as their Special Counsel in this Chapter 11 proceeding pursuant to 11 U.S.C. §§ 327 and 328 . . . ." This language was incorporated into the Retention Order, authorizing payment in accordance with the debtor's application and the Rothschild Letter.[5] The United States Trustee's objection also recognized that the application was made under section 328(a). Moreover, as noted above, at the hearing, Judge Blackshear made several comments suggesting that his pre-approval was made under section 328(a), noting that "[t]he contingency fee . . . basically addresses the reasonableness that if he doesn't bring in anything, he doesn't get paid at all. [Whereas] if he was under [sections] 330 or 331 we would be liable for his daily time charges." Thus, the court specifically noted that section 330 of the Code – the alternative to section 328(a) pre-approval – did not apply.

[5] Appellant submits that both courts below failed to consider the fact that the Retention Order incorporated not only the Rothschild Letter, but also Smart World's application for retention, which states that "Riker Danzig has agreed to take up the matters concerning the disputes with Juno on a contingency basis, with no funds required . . . unless Riker is successful in obtaining a result for the estates." According to Appellant, in order to recover anything, Riker Danzig must have brought about the successful result, not merely observed success for which it was not responsible. However, the Rothschild Letter clearly states that Riker Danzig's recovery would come from any funds obtained from Juno after it was retained as counsel. Second, as the district court noted, Riker Danzig was responsible for Smart World's successful recovery: "[T]he settlement was negotiated under the threat of litigation by Riker Danzig, [and] after Riker Danzig's successful efforts to overturn the first settlement on appeal, the ultimate settlement was increased by about one fifth (from $5.5 million to $6.5 million)." *Smart World II*, 383 B.R. at 875 n.2.

-10-

Appellant argues that the court's approval was not final or unambiguous because the Retention Order states that "any and all compensation to be paid to Riker . . . shall be fixed upon further application of this Court." According to Appellant, this language suggests that the bankruptcy court would retain some final approval over the reasonableness of the fee before it was permitted to be paid. This overlooks the fact that the sentence concludes by stating that the fee "shall be in accordance with the within application and the letter of James S. Rothschild, Jr., Esq., dated November 15, 2000 . . . ." Section 328(a) concerns only judicial approval of the terms of a professional's representation, not the relatively ministerial matter of his or her payment. The requirement that Riker Danzig "further appl[y]" for payment was entirely *pro forma*, as the court had already fixed and approved the calculation of the amount to be paid. Unlike the orders in *B.U.M.* and *Circle K*, Riker Danzig's Retention Order did not provide for any additional layer of substantive approval prior to payment. In fact, Judge Blackshear specifically told the parties at the hearing that the court would not "review the time records of the individual . . . because of the fact that he agreed to a contingency fee." Thus, we agree with both courts below in concluding that the Retention Order was a pre-approval under section 328(a).

**II**

The second, related question is whether there exist any grounds for disturbing the court's section 328(a) pre-approval. Under section 328(a), a pre-approved fee arrangement may only be altered if proven "to have been improvident in light of developments not capable of being anticipated at the time" of the pre-approval. Surprisingly few cases have construed this language, but those that have make it evident that it is a high hurdle to clear. According to the Fifth

Circuit, section 328(a) requires "the bankruptcy court . . . [to] determine[] whether developments, which made the approved fee plan improvident, had been incapable of anticipation at the time the award was approved." *See In re Barron*, 325 F.3d 690, 693 (5th Cir. 2003). For example, simply because the size and scope of a settlement had not actually been anticipated, it does not follow that it was *incapable of anticipation*. *See id.* at 693-94. Similarly, the fact that contingency fees may appear excessive in retrospect is not a ground to reduce them because "early success by counsel is always a possibility capable of being anticipated." *In re Gilbertson*, No. 06-C-610, 2007 WL 433096, at *5 (E.D. Wisc. Feb. 4, 2007).

We agree with the district court that none of the four developments cited by the bankruptcy court were *incapable* of being anticipated (as opposed to merely not actually anticipated) in November 2000. Two of the developments mentioned by the bankruptcy court were the "divergent positions regarding litigation and settlement strategy . . . between the Debtor and the Committee" and the desire of the former to benefit its equity holders rather than its creditors. Yet, as Judge Cedarbaum noted, "some degree of antagonism and animosity between a debtor and creditor can be expected in any bankruptcy proceeding." *Smart World II*, 383 B.R. at 877 (quoting *In re Marvel Entm't Group*, 140 F.3d 463, 474 (3d Cir. 1998)). After all, both entities seek to maximize their shares of a finite (and always inadequate) pool of resources. Regardless of whom Smart World intended to benefit, it is undisputed that its successful appeal increased the total recovery from Juno by nearly 20%, benefitting the estate and its creditors alike.

The other two developments mentioned by Judge Peck were "the unusually prolonged

-12-

procedur[al] path of this litigation," and "the fact that Riker Danzig . . . was an obstacle, not an asset, when it came to approval of the settlement." But the prospect of prolonged litigation always exists, and was clearly anticipated by the parties, who made Riker Danzig's contingent fee a function of the length of the litigation. In addition, the extended duration was the product of two factors: the two-year stay imposed by the same bankruptcy court that approved the fee agreement, and Smart World's successful appeal. One need only glance at this Court's crowded docket to see that an appeal from an adverse ruling is not an event incapable of being anticipated. Riker Danzig's objection and appeal on behalf of Smart World's shareholders was vindicated by our learned colleagues' decision, which held: "[T]he debtor bears the burden of maximizing the value of the estate, including the value of any legal claims . . . . [I]n some instances, fiduciary duty requires the chapter 11 debtor to pursue a cause of action, but in other instances may require settlement." *Smart World I*, 423 F.3d at 175 (internal quotation marks, citations and alterations omitted). Riker Danzig was not pursuing frivolous litigation to extend the contest to increase its payday – it won the appeal. Simply put, none of these developments were *incapable* of being anticipated at the time the bankruptcy court pre-approved the terms of Riker Danzig's retention.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.