*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0342p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

In re: AIRSPECT AIR, INC.,

*Debtor.*

JEFFREY L. NISCHWITZ; TIMOTHY L. MCGARRY; CHRISZT
MCGARRY COMPANY, L.P.A., formerly known as
Nischwitz, Pembridge & Chriszt Co., L.P.A.,

*Appellees,*

*v.*

SPASOJE MISKOVIC, the sole interest holder in Debtor
Airspect Air, Inc. (03-3303); SAUL EISEN, U.S. Trustee,
for Region 9 (03-3484),

*Appellants.*

Nos. 03-3303/3484

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 96-50540—Marilyn Shea-Stonum, Bankruptcy Judge.

Argued: June 15, 2004

Decided and Filed: October 4, 2004

Before: SILER and ROGERS, Circuit Judges; FORESTER, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Daniel J. McGown, Sr., Wadsworth, Ohio, Roger Craig Green, U.S. DEPARTMENT OF
JUSTICE, CIVIL DIVISION, Washington, D.C., for Appellants. Timothy L. McGarry, CHRISZT
McGARRY CO., Cleveland, Ohio, for Appellees. **ON BRIEF:** Daniel J. McGown, Sr., Wadsworth, Ohio,
William Kanter, Roger Craig Green, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, Washington,
D.C., for Appellants. Timothy L. McGarry, CHRISZT McGARRY CO., Cleveland, Ohio, for Appellees.

_____

[*] The Honorable Karl S. Forester, Chief United States District Judge for the Eastern District of Kentucky, sitting by
designation.

1

---

**OPINION**

---

SILER, Circuit Judge.  The bankruptcy court authorized Airspect Air, Inc. ("Airspect"), then in Chapter 11 proceedings, to retain Jeffrey Nischwitz as special counsel in order to prosecute a breach of contract action against the City of Akron (the "City").  Airspect retained Nischwitz under a contingency fee agreement, and, after the lawsuit settled, Nischwitz filed an application for his contingency fee.  The bankruptcy court denied the application, however, finding pursuant to § 330 of the Bankruptcy Code that the fee sought by Nischwitz was unreasonable.  Nischwitz appealed to the Bankruptcy Appellate Panel of the Sixth Circuit (the "BAP"), which held that the bankruptcy court had "pre-approved" the contingency fee agreement under § 328 of the Bankruptcy Code and, thus, was obligated to honor the agreement unless intervening circumstances had rendered the agreement "improvident."  On remand, the bankruptcy court held that an intervening circumstance had, in fact, rendered the agreement "improvident," but, on a second appeal, the BAP disagreed.  Spasoje Miskovic, the sole interest holder in Airspect, appeals, arguing that (1) the bankruptcy court never "pre-approved" the contingency fee agreement, and alternatively that (2) the termination of the lease by operation of law rendered the agreement "improvident."  We hold that the bankruptcy court never "pre-approved" the contingency fee agreement and **REVERSE** and **REMAND**.

### *BACKGROUND*

Airspect entered into a long-term lease with the City to operate a "fixed-based operation" at the Akron-Fulton International Airport.  In compliance with the lease, Airspect constructed a 28,500 square foot building, hangar, ramp, and fuel farm (collectively, the "Improvements").  After various disputes concerning the terms of the lease, Airspect withheld payments from the City.

In June 1994, Airspect sued in the Court of Common Pleas of Summit County, Ohio.  It asserted claims for breach of contract, misrepresentation, and constructive eviction, and prayed for $10 million in compensatory damages and rescission of the lease.  The City, in turn, alleged that Airspect had materially breached the lease, and sought to recover damages, to evict Airspect from its leasehold, and to recover the Improvements.

In December 1995, Airspect's counsel withdrew from the litigation, so Airspect retained Nischwitz.[1] In March 1996, Airspect filed a voluntary Chapter 11 petition in the bankruptcy court.  The state lawsuit was stayed and then transferred to the bankruptcy court as an adversary proceeding in the Chapter 11 reorganization.

In May 1996, Airspect, acting as a debtor in possession, applied to the bankruptcy court for authorization to employ Nischwitz as special counsel for the purpose of litigating Airspect's suit against the City.  The application requested a $7,000 retainer and stated that the parties had reached a contingency fee agreement with the following terms:  "Fees, other than expenses, are to be paid on a contingency basis and are subject to approval by this court.  The fee agreement states 33% if settled at least two weeks before trial; 40% if within two weeks of trial or, after commencement of trial; 50% if post-trial or re-trial."  The bankruptcy court issued an order authorizing Nischwitz's employment.  Specifically, the order provided that "Airspect is authorized to pay the sum of $7,000 of corporate funds as partial retainer for expenses" and that Nischwitz must "submit application for fees to this Court for approval."

---

[1] When initially hired, Nischwitz was a solo practitioner.  During the course of his representation of Airspect, however, he joined a law firm.  We use "Nischwitz" to identify the attorney(s) representing Airspect.

The City filed a motion for a termination of the automatic stay, arguing that the lease had terminated by operation of law pursuant to 11 U.S.C. § 365(d)(4)[2] when Airspect failed to assume or reject the lease within sixty days after the date of the order for relief. The bankruptcy court agreed that the lease was rejected pursuant to § 365(d)(4). The court determined, however, that Airspect had significant equity in the Improvements, and denied the City's motion for relief from the stay and allowed Airspect to remain in possession of the property. The City appealed to the United States District Court for the Northern District of Ohio. In July 1998, the district court reversed the bankruptcy court's denial of relief from the stay, holding that Airspect's rejection of the lease meant that the City was entitled to immediate possession of the leased premises. The parties settled the matter during the pendency of an appeal to this court.

Meanwhile, the adversary proceeding between Airspect and the City proceeded. In 1997, the bankruptcy court transferred the matter to the district court. In 1999, the parties reached a settlement whereby the City agreed to (1) accept the sale of Airspect's assets to a new fixed base operator found by Airspect, or (2) pay Airspect the sum of $575,000 in exchange for Airspect's surrender of the leased premises and the Improvements. The bankruptcy court approved the settlement and the district court dismissed the lawsuit. Eventually, the City elected to pay $575,000 to Airspect.

In 2000, Nischwitz filed a fee application in the bankruptcy court. Nischwitz requested $189,750 per the contingency fee agreement. Airspect's sole interest-holder, Spasoje Miskovic, filed objections to Nischwitz's fee application. The trustee had no objection to Nischwitz's application.

The bankruptcy court approved only $37,050 in fees for Nischwitz. It denied Nischwitz's request for payment under the contingency fee agreement, finding that the contingency (a trial or settlement) had not been met because the lawsuit had been resolved incidental to a "sale" of the lease and the Improvements as part of a "global settlement" between the parties. Consequently, the court awarded what it deemed reasonable compensation to Nischwitz pursuant to § 330(a) of the Bankruptcy Code.[3] It found that only those services rendered prior to September 9, 1996, when the bankruptcy court ruled that Airspect had rejected the lease, conferred a benefit upon the estate. Accordingly, the court awarded Nischwitz fees of $37,050 for the 247 hours worked prior to September 9, 1996.

The BAP reversed, holding that Nischwitz had satisfied the contingency agreement by settling the case and rejecting the bankruptcy court's characterization of the settlement as a "sale." The BAP found that the bankruptcy court had approved the contingency agreement pursuant to § 328 of the Bankruptcy Code[4] and, thus, was required to honor the agreement unless it proved "improvident" in light of subsequent events. This decision was not appealed.

On remand, the bankruptcy court found that it had improvidently approved the contingency fee agreement in light of the lease rejection by operation of law. The court stated, "Had such a fact been comprehended, the need for debtor to retain special litigation counsel on a contingency basis to prosecute the only then remaining claim in the Adversary Proceeding (breach of contract) would not have been as great because, at that point, debtor had, as a matter of law, been deemed to have breached that contract." The

---

[2]Section 365 of the Bankruptcy Code provides that the trustee "may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(d)(4) states that "if the trustee does not assume or reject an unexpired lease . . . within 60 days after the date of the order for relief . . . then such lease is deemed rejected."

[3]Section 330 allows the bankruptcy court to award to a professional employed by the estate "reasonable compensation for actual, necessary services." 11 U.S.C. § 330(a).

[4]Section 328 permits the trustee, with the court's approval, to employ a professional "on any reasonable terms and conditions of employment." 11 U.S.C. § 328(a). Notwithstanding any such approval, the court may allow different compensation "if the terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." *Id.*

court then evaluated Nischwitz's application under § 330 again, and again awarded Nischwitz $37,050. The court also noted that it did not "consider [Nischwitz's] retention to have been approved under § 328 of the Bankruptcy Code," despite the BAP's holding.

The BAP again reversed the bankruptcy court. The BAP held that the lease rejection had not rendered the fee agreement improvident because it was "irrelevant" since "the damages that [Nischwitz] had been retained to recover were actionable whether the lease was terminated or not." The BAP also reaffirmed that the bankruptcy court had approved the contingency fee agreement under § 328. It dismissed the bankruptcy court's argument that (1) Nischwitz's failure to cite § 328 in his application, and (2) the provision in the retention order requiring Nischwitz to "submit application for fees to this Court for approval" precluded the conclusion that the fee agreement had been approved pursuant to § 328. Miskovic appealed. The trustee also appealed based on his authority to "be heard on any issue in any case or proceeding under [the Bankruptcy Code]." 11 U.S.C. § 307.

## ANALYSIS

### Standard of Review

"We independently review the decision of the bankruptcy court that comes to us by way of appeal from a Bankruptcy Appellate Panel." *In re Behlke*, 358 F.3d 429, 433 (6th Cir. 2004). Our review "of the bankruptcy court's retention and compensation orders is limited to abuse of discretion." *In re Federated Dep't Stores, Inc.*, 44 F.3d 1310, 1315 (6th Cir. 1995). An abuse of discretion occurs when the bankruptcy court relies upon clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard. *In re Downs*, 103 F.3d 472, 480-81 (6th Cir. 1996); *In re Federated Dep't Stores*, 44 F.3d at 1315. Whether the bankruptcy court approved attorney's fees under § 328 is a question of law. *See In re Circle K Corp.*, 279 F.3d 669, 671 (9th Cir. 2002); *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.,* 50 F.3d 253, 261-62 (3d Cir. 1995); *In re Texas Sec., Inc.*, 218 F.3d 443, 445 (5th Cir. 2000) (reviewing as question of law).

### Statutory Framework

Section 327 of the Bankruptcy Code authorizes the trustee, with the court's approval, to employ professionals, including attorneys, "to represent or assist the trustee in carrying out the trustee's duties under" the Bankruptcy Code. 11 U.S.C. § 327(a). Particularly, § 327 allows the trustee, with the court's approval, to employ an attorney who has represented the debtor "for a specified special purpose . . . if in the best interest of the estate." 11 U.S.C. § 327(e). Under § 328, a trustee, with the court's approval, may employ a professional under § 327 "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Even if the trustee and the court "pre-approve" a professional's compensation pursuant to § 328, "the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." *Id*. Absent approval of compensation under § 328, the court awards a professional employed under § 327 "reasonable compensation for actual, necessary services rendered by [the professional] . . . , based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title," as well as "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a).

To summarize, "[s]ection 328 applies when the bankruptcy court approves a particular rate or means of payment, and § 330 applies when the court does not do so." *In re Texas Sec., Inc.*, 218 F.3d at 445.

*Did the Bankruptcy Court Approve the Contingency Fee Agreement Pursuant to § 328?*

Section 328 permits attorneys to obtain prior court approval of the terms of their compensation. "Under Section 328, an attorney or other professional may avoid [] uncertainty by obtaining approval of her representation and fee arrangement prior to performing the contemplated services." *In re Barron*, 325 F.3d 690, 693 (5th Cir. 2003). "Once the bankruptcy court has approved a rate or means of payment, such as a contingent fee, the court cannot on the submission of the final fee application instead approve a 'reasonable' fee under § 330(a), unless the bankruptcy court finds that the original arrangement was improvident due to unanticipated circumstances as required by § 328(a)." *In re Texas Sec., Inc.*, 218 F.3d at 445-46.

Two of our sister circuits demand certain formalities before a term of compensation is deemed "approved" pursuant to § 328. The Third Circuit has held

> [i]f the order does not expressly and unambiguously state specific terms and conditions (e.g., specific hourly rates or contingency fee arrangements) that are being approved pursuant to the first sentence of section 328(a), then the terms and conditions are merely those that apply in the absence of specific agreement. That leaves the court free to apply lodestar rates unfettered by the stricture of the second sentence of section 328(a).

*Zolfo, Cooper & Co.*, 50 F.3d at 261. The Ninth Circuit employs a stricter standard, holding that "unless a professional's retention application unambiguously specifies that it seeks approval under § 328, it is subject to review under § 330."[5] *Circle K Corp.*, 279 F.3d at 671; *see also In re B.U.M. Int'l, Inc.*, 229 F.3d 824, 829 (9th Cir. 2000). These decisions reason that "the burden should rest on the applicant to ensure that the court notes explicitly the terms and conditions if the applicant expects them to be established at that early point," and that "the bankruptcy court's duty to conduct an independent examination of fee applications for services rendered would be unduly restricted if employment authorization orders were routinely construed as binding the court to particular terms of employment." *Zolfo*, 50 F.3d at 262 (internal citation omitted).

We think the standards of the Ninth and the Third Circuits for determining whether § 328 pre-approval has occurred are too constrictive. On the other hand, a finding of pre-approval based on less than the bankruptcy court's affirmative authorization of payment terms would be too lax. Nowhere does the Bankruptcy Code mandate that the application specifically mention § 328 or that the court's approval order expressly and unambiguously state specific terms and conditions.[6] A standard inferring § 328 pre-approval from the simple mention of a fee agreement in the debtor's motion for appointment, however, would undermine the statutory scheme. Under the Code, approval of compensation for "actual, necessary services rendered" under § 330, rather than pre-approval under § 328, forms the default rule. *See* 11 U.S.C. § 330(a) (providing that the bankruptcy court may award reasonable compensation for services rendered or reimbursement for actual expenses "subject to section[] . . . 328"). A bankruptcy judge thus has the discretion to determine the amount of a professional's payment separately from authorizing the professional's employment under § 327(e).

We hold that whether a court "pre-approves" a fee arrangement under § 328 should be judged by the totality of the circumstances, looking at both the application and the bankruptcy court's order. Factors in the determination may include whether the debtor's motion for appointment specifically requested fee pre-

---

[5]The Ninth Circuit also recommends that "[a]s a matter of good practice, the bankruptcy court's retention order should likewise specifically confirm that the retention has been approved pursuant to § 328 so as to avoid any ambiguity. The absence of such a specific reference in the bankruptcy court's order, however, would not of itself automatically override the retention applicant's invocation of § 328." *In re Circle K Corp.*, 279 F.3d at 671.

[6]Indeed, Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, which governs the employment of professionals, does not mandate that a retention application specify the particular statutory provision under which employment is sought. *See* Fed. R. Bankr. R. 2014(a).

approval, whether the court's order assessed the reasonableness of the fee, and whether either the order or the motion expressly invoked § 328.

Nischwitz's entire argument rests on Airspect's application to employ him, which recited the terms of the parties' contingency agreement. The rest of the circumstances overwhelm the application's lone reference to the contingency agreement. Neither the application nor the order approving his employment referred to § 328. Further, neither discussed the reasonableness of the fee–the foundation of the § 328 inquiry. The order failed to mention the contingency agreement and required Nischwitz to submit applications for fees to the court for approval. Moreover, neither party invoked § 328 in briefing and arguing Miskovic's objections to Nischwitz's fee application.

The cases relied upon by Nischwitz are inapposite, as each involves an "internal conflict" in a retention order. In *In re National Gypsum Co.*, 123 F.3d 861, 862 (5th Cir. 1997), the bankruptcy court granted approval "upon the terms and conditions of that certain engagement letter dated April 16, 1991," but "retain[ed] the right to consider and approve the reasonableness and amount of [the professional's] fees on both an interim and final basis." The Fifth Circuit held that the bankruptcy court's reservation of the right to consider the "reasonableness" of the fees did not negate its "approval" of the fee arrangement under § 328 but instead merely acknowledged the court's right to review any fee award for "improvidence." *Id.* at 863. Similarly, in *In re Texas Securities*, 218 F.3d at 444-45, the bankruptcy court approved a compensation arrangement under § 328 but reserved its "authority to review this and all employment orders in accordance with Section 328 of the Bankruptcy Code." Notwithstanding the reservation language, the Fifth Circuit held that the bankruptcy court erred by evaluating the subsequent fee application under § 330. Unlike in the case at bar, the orders at issue in *National Gypsum* and *Texas Securities* affirmatively approved the fee arrangement negotiated by the trustee.

Thus, we hold, under the totality of the circumstances, that the bankruptcy court never "pre-approved" the contingency arrangement under § 328.

### CONCLUSION

We **REVERSE** the BAP's judgment and **REMAND** for the BAP to consider whether the bankruptcy court abused its discretion in awarding Nischwitz only $37,050 in fees under § 330.