RECOMMENDED FOR PUBLICATION
File Name: 20b0002p.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE:  GLENVIEW HEALTH CARE FACILITY, INC.,

*Debtor.*

BINGHAM GREENEBAUM DOLL LLP, The Proposed
Counsel to the Unsecured Creditors' Committee,

*Appellant*,

*v.*

GLENVIEW HEALTH CARE FACILITY, INC.,

*Appellee.*

No. 19-8028

Appeal from the United States Bankruptcy Court
for the Western District of Kentucky at Bowling Green.
No. 1:19-bk-10795—Joan A. Lloyd, Judge.

Decided and Filed:  November 6, 2020

Before: BUCHANAN, DALES, and MASHBURN, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ON MERITS AND SUPPLEMENTAL BRIEFS:**  James R. Irving, April A. Wimberg,
DENTONS BINGHAM GREENEBAUM LLP, Louisville, Kentucky, for Appellant.  Mark H.
Flener, LAW OFFICE OF MARK H. FLENER, Bowling Green, Kentucky, for Appellee.

_____

## OPINION

_____

SCOTT W. DALES, Bankruptcy Appellate Panel Judge.  The Official Committee of
Unsecured Creditors of chapter 11 debtor Glenview Health Care Facility, Inc., retained a law

firm to represent it in connection with the case, the Debtor objected, and the bankruptcy court disqualified the law firm.  After the Committee was disbanded, the disappointed law firm timely appealed from the disqualification order, arguing that the bankruptcy court abused its discretion in withholding its approval.  We agree with the law firm and, expressing no opinion on whether the law firm should be appointed, we vacate the disqualification order and remand for further proceedings.

## ISSUES ON APPEAL

The issue on appeal is whether the bankruptcy court erred in holding that Dentons Bingham Greenebaum LLP ("DBG")[1] could not represent the Committee due to lack of disinterestedness or disqualification under the Kentucky Rules of Professional Conduct for its prior representation of an insider.

## JURISDICTION AND STANDARD OF REVIEW

Before reaching the merits of an appeal, the Panel is obligated to first ascertain its own jurisdiction.  *BN1 Telecommunications, Inc. v. Lomaz* (*In re BN1 Telecommunications, Inc.*), 246 B.R. 845, 848 (B.A.P. 6th Cir. 2000) ("The Panel, like all federal courts, is obligated to determine its own subject matter jurisdiction.").  To this end, after expressing doubts about the finality of the order under review and the justiciability of the appeal, the Panel requested additional briefing.

As previously indicated in the Order dated June 25, 2020, the confirmation of the Debtor's plan and the closing of its case removes all doubt about the finality of the order on appeal.  With respect to earlier doubts about justiciability, specifically concerns about mootness and standing stemming from the dissolution of the Committee before the perfection of this appeal, the parties' responses to the Order dated June 25, 2020 sufficiently addressed the concerns.  While there can be no doubt that the dissolution of the Committee on December 26, 2019 rendered moot any ruling regarding employment after that date, the Panel is satisfied that the "collateral consequences" of the bankruptcy court's retention order on the Appellant's ability

---

[1]The firm was known as Bingham Greenebaum Doll, LLP when the Committee sought approval for retention, but the Panel will refer to the firm by its current name throughout this opinion.

to seek compensation for pre-dissolution work under § 330 supply a sufficient "case or controversy" to warrant appellate review under Article III of the Constitution. *See Michel v. Federated Dep't Stores* (*In re Federated Dep't Stores*), 44 F.3d 1310, 1315–16 (6th Cir. 1995). Likewise, the Appellant has an obvious pecuniary interest in pursuing the appeal, sufficient to permit the Panel to recognize Article III standing. Finally, any possible quarrel with the Appellant's *de facto* substitution for the Committee in pursuing the *Committee's* application under Federal Rule of Bankruptcy Procedure 2014(a) would arise from a non-jurisdictional defect[2] that has apparently been waived. *See Hood v. Tennessee Student Assistance Corp.* (*In re Hood*), 319 F.3d 755, 760 (6th Cir. 2003) *aff'd and remanded sub nom. Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 124 S. Ct. 1905 (2004) ("It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.") (citations omitted).

The Panel reviews the bankruptcy court's order denying the Committee's application for approval of counsel's employment for an abuse of discretion. *See Federated Dep't Stores, Inc.*, 44 F.3d at 1315 (citations omitted). "An abuse of discretion occurs when the bankruptcy court relies upon clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *Nischwitz v. Miskovic* (*In re Airspect Air, Inc.*), 385 F.3d 915, 920 (6th Cir. 2004).

## FACTS

Glenview Health Care Facility, Inc. ("Debtor") operated a sixty-bed nursing home facility located in Glasgow, Kentucky. Kay Bush and Lisa Howlett have jointly owned the Debtor, in equal shares, for over 30 years. On August 1, 2019, Debtor filed a voluntary chapter 11 bankruptcy petition. The Official Creditors Committee was formed around August 30, 2019. On September 5, 2019, DBG filed notices of appearance in the case. The Committee filed an application to retain DBG on September 25, 2019.

---

[2]Although "[a]n order approving the employment of attorneys . . . pursuant to . . . § 1103 . . . of the Code shall be made only on application of the … committee," Fed. R. Bankr. P. 2014(a), courts have treated the requirement flexibly. *See, e.g., Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474 (B.A.P. 9th Cir. 1996). And, as with other procedural rules, Rule 2014(a) does not extend or limit jurisdiction. Fed. R. Bankr. P. 9030; *Kontrick v. Ryan*, 540 U.S. 443, 453, 124 S. Ct. 906, 914 (2004).

The Committee's application included a declaration from David Irving, managing partner of DBG, disclosing potential conflicts (the "Irving Declaration"). (Application, Ex. A., Case No. 19-10795 ECF No. 52-1, Sept. 25, 2019.)[3]  The Irving Declaration stated:

> [DBG] has previously represented Lisa Howlett in estate planning matters which pre-date and are unrelated to the Chapter 11 case.  [DBG's] representation of Ms. Howlett concluded in 2017.  Out of an abundance of caution, the professionals who represented Ms. Howlett will not represent the Committee.

(Irving Declaration, ECF No. 52-1, at 4, ¶ 5(d).)

On October 16, 2019, the Debtor filed an objection to the employment of DBG, although Ms. Howlett did not.  (ECF. No. 62.)  The Debtor asserted that DBG "was more directly involved with Glenview Heath Care Facility, Inc.  Specifically, [DBG] assisted Glenview and Lisa Howlett with the preparation of a buy-sell agreement for the purchase and sale of Glenview and all its assets."  (*Id.*)  Debtor attached an invoice from DBG for the period April 19, 2016 through June 10, 2016 showing that DBG provided estate planning advice for Lisa Howlett, one of the Debtor's two 50% shareholders.  The invoice includes several entries regarding a buy-sell agreement for Glenview Health.  Through the Committee's reply, DBG asserted that no buy-sell agreement was consummated, and that the representation related only to estate planning.

The bankruptcy court heard arguments on the matter on November 21, 2019 but did not conduct an evidentiary hearing.  The attorney for Debtor asserted that Ms. Howlett felt that DBG's prior representation of her should disqualify DBG; again, however, Ms. Howlett did not file her own objection.  On December 17, 2019, the bankruptcy court entered a memorandum opinion and order denying the Committee's application to employ DBG ("Opinion").  (Op., ECF No. 94 at 8.)  After the bankruptcy court rendered its Opinion but before the deadline for appealing, the Committee dissolved, evidently for reasons unrelated to the Opinion.  DBG picked up the baton and filed this appeal within 14 days after entry of the Opinion.

---

[3]All ECF citations are to the Debtor's bankruptcy case, 19-10795, unless stated otherwise.

**DISCUSSION**

### I.          11 U.S.C. § 1103

The bankruptcy court began its analysis by citing 11 U.S.C. § 1103,[4] which provides that "[a]n attorney or accountant employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case." (Op. at 3 citing 11 U.S.C. § 1103(b).)  The court noted that "[h]ere, the alleged conflicting representation occurred three years prior to the initiation of the case currently before the Court."  (*Id.*)  Further, the bankruptcy court acknowledged that "[w]hile the burden of proof in seeking disqualification of opposing counsel is on the party seeking disqualification, a professional seeking appointment under § 327 bears the initial burden of proof that they meet all qualifications of the statute in order to obtain the appointment." (*Id*. at 3–4.)

DBG asserts that it meets the requirements for employment contained in § 1103 because it did not represent Ms. Howlett while employed by the Committee.  Further, DBG argues that "[s]ection 1103(b) is the only statutory provision that concerns the committee's right to select counsel." (Appellant Br. at 10, BAP ECF No. 14, quoting *In re Enron Corp*., No. 01-16034 (AJG), 2002 WL 32034346, at *6 (Bankr. S.D.N.Y. May 23, 2002).)  DBG argues, based on the text of § 1103, that proposed committee counsel should not be disqualified for its prior representation of a party holding an adverse interest so long as that representation has concluded prior to its appointment.  (*Id*. at 11 citing *Exco Resources, Inc. v. Milbank, Tweed, Hadley & McCloy LLP* (*In re Enron Corp*.), No. 02-CIV. 5638 (BSJ), 2003 WL 223455, at *7 (Bankr. S.D.N.Y., Feb. 3, 2003).)

In its brief, Debtor acknowledges that "Section 1103, unlike Section 327(a) lacks the disinterested requirement; however, the section of the Code governing actual payment to employed professionals does impose a disinterested requirement." (Appellee Br. at 11, BAP ECF No. 16.)  Debtor does not assert that DBG concurrently represented the Committee and a party with an adverse interest.  Likewise, the bankruptcy court did not make such a finding.

---

[4]All code sections refer to the Bankruptcy Code, 11 U.S.C. § 101, et seq., unless otherwise stated.

Probably reflecting the different duties of representatives for committees and estate fiduciaries, the Bankruptcy Code provides different standards for the employment of the respective professionals. *Compare* 11 U.S.C. § 327(a) (authorizing a trustee or debtor-in-possession to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons"), *with* § 1103(b) (forbidding a committee's attorney "while employed by such committee, [to] represent any other entity having an adverse interest in connection with the case"). Because every trustee must be a "disinterested person,"[5] it makes sense that the trustee's court-approved agents must be disinterested, too. A creditor, however, can never qualify as a "disinterested person" under the Bankruptcy Code so it comes as no surprise, as the statute recognizes, that a professional who represents a group of creditors (the committee) need not qualify as a disinterested person, either. Indeed, unlike a trustee, a creditor's committee is, by design, a "partisan representative," not a detached fiduciary. *In re National Liquidators, Inc.*, 182 B.R. 186, 191 (S.D. Ohio 1995).

Recognizing this distinction as reflected in the text of § 1103, other courts have held that a law firm's prior employment, if ended, will not preclude representation of a creditors' committee:

> Prior representations, even if adverse to the interests of the committee or unsecured creditors, do not disqualify committee counsel. *See, e.g.*, *In re Enron Corp.*, No. 02 Civ. 5638 (BSJ), 2003 WL 223455, *6–7 (S.D.N.Y. Feb. 3, 2003) (finding committee counsel did not hold an adverse interest because it had previously represented debtor-related entities and stating that the "argument under § 1103 fails because [counsel's] alleged adverse interests . . . predated [counsel's] representation of the committee"); *In re Diva Jewelry Design, Inc.*, 367 B.R. 463, 473–74 (Bankr. S.D.N.Y. 2007) (finding that discussions that proposed trustee's counsel had with creditors regarding their possible consignment claims prior to retention by trustee did not disqualify counsel from employment); [*In re*] *Nat'l Century Fin.*, 298 B.R. at 118 [(Bankr. S.D. Ohio 2003] (finding firm not disqualified from representing committee although it had previously represented the debtor in a discreet matter that ended before bankruptcy).

*In re Universal Bldg. Prod.*, 486 B.R. 650, 662–63 (Bankr. D. Del. 2010).

---

[5]*See* 11 U.S.C. § 101(14) (defining "disinterested person"); § 1104(d) (United States Trustee may appoint "one disinterested person" to serve as trustee).

It is true, as the bankruptcy court implied, that § 328(c) permits a court to deny a committee professional's compensation "if, at any time during such professional person's employment under section . . . 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed," but DBG was not seeking compensation. Instead, its client (the Committee) was seeking approval of its choice of counsel. Although the Panel does not fault the bankruptcy court for forecasting its concerns about DBG's ultimate right to compensation,[6] it erred by withholding its approval of DBG as committee counsel under § 1103 by engrafting into that statute the term "disinterested person" where it nowhere appears.[7] The bankruptcy court's Opinion simply conflates § 1103 with § 327 and proceeds as if § 1103 contains the same disinterestedness requirement. It does not, and this misapplication of § 1103 reflects an abuse of discretion.

## II.      Kentucky Rule of Professional Conduct 1.9

In withholding approval of DBG's employment, the bankruptcy court apparently read the Debtor's objection to DBG's employment as, in effect, a motion to disqualify counsel, and relied on Kentucky Rule of Professional Conduct 1.9, which governs disqualification and discusses duties to former clients.[8]

---

[6]The bankruptcy court suggested its concerns this way at the hearing: "if I'm wrong . . . in a way of letting you spend out a big bill, . . . if I am wrong at the get go on your conflict, and you rely upon that, and I end up, I am overturned at some point in the future, you bear the burden of that, not me." (Nov. 21, 2019 Hr'g Tr. 11:14–20, ECF No. 131.)

[7]The Panel is not suggesting that DBG's prior and concluded representation of Ms. Howlett necessarily licenses the bankruptcy court to deny compensation for lack of disinterestedness if or when the firm eventually files its fee application, because the term "disinterested person" is defined in the present tense, and DBG reportedly represented Ms. Howlett in the past. "Congress' use of a verb tense is significant in construing statutes," *United States v. Wilson*, 503 U.S. 329, 333, 112 S. Ct. 1351, 1354 (1992), including the Bankruptcy Code as the Sixth Circuit recently demonstrated in a different context. *Cf. Coslow v. Reisz*, 811 F. App'x 980, 984 (6th Cir. 2020) ("In fact, the abandonment section uses the present tense when discussing abandonment of valueless property."). Just as the issue of compensation and disinterestedness was not properly before the bankruptcy court, it is not before the Panel.

[8]Kentucky Supreme Court Rule 3.130 comprises the Kentucky Rules of Professional Conduct ("KRPC"). For convenience, however, the Panel will refer to Kentucky Supreme Court Rule 3.130(1.9) (Duties to Former Clients) as "KRPC 1.9," and Kentucky Supreme Court Rule 3.130(1.10) (Imputation of Conflicts of Interests: General Rule) as "KRPC 1.10."

Although it did not provide a complete explanation for applying the KRPC in bankruptcy proceedings, the bankruptcy court cited a case from the United States District Court for the Western District of Kentucky holding that "[a]ttorneys that practice in the Western District of Kentucky must follow the standards set forth in the Rules for Professional Conduct as adopted by the Kentucky Supreme Court." *Encore Energy, Inc. v. Morris Kentucky Wells, LLC*, No. 118CV00180GNSHBB, 2019 WL 2011062, at *1 (W.D. Ky. May 7, 2019) (citing *Harper v. Everson*, 2016 WL 9149652 at *3 (W.D. Ky. 2016); *See* 6th Cir. R. 46(b); LR 83.1, 83.2, 83.3; Ky. Sup. Ct. R. 3.130).

Likewise, other courts within the Sixth Circuit have acknowledged the role that state ethics rules can play in disqualification disputes. *See El Camino Res., Ltd. v. Huntington Nat'l Bank*, 623 F. Supp. 2d 863, 876 (W.D. Mich. 2007) ("Ethical rules involving attorneys practicing in the federal courts are ultimately questions of federal law. The federal courts, however, are entitled to look to the state rules of professional conduct for guidance."); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc.*, 466 F.3d 456, 457–58 (6th Cir. 2006), *vacated in part on other grounds*, 472 F.3d 436 (6th Cir. 2007) (applying Michigan Rules of Professional Conduct)). *See also In re Ralph Roberts Realty, LLC*, 500 B.R. 862, 864 (Bankr E.D. Mich. 2013) (quoting *El Camino* for same). Indeed, the Sixth Circuit itself has held that KRPC 1.9 adopts essentially the same test for disqualification as prescribed by the Sixth Circuit in *Dana Corp*. *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 651 (6th Cir. 2013) ("the effect of using the Kentucky Rules of Professional Conduct in place of or in conjunction with our *Dana* analysis is minimal at best because the relevant Kentucky Rule is essentially the same").

Because § 1103 requires the bankruptcy court's approval for employment of committee counsel, it is perfectly appropriate for the bankruptcy court to consider state rules governing the professional responsibility of an attorney to the extent adopted by the federal court and put in issue by the parties. Section 1103 addresses the employment of one or more "attorneys," a term the Bankruptcy Code defines by reference to the authorization to practice law under "applicable law." 11 U.S.C. § 101(4). Although the laws of Kentucky did not make the Kentucky Rules of Professional Conduct applicable in bankruptcy court, the Western District of Kentucky certainly did. LR 83.3(c) (W.D. Ky.). *In re Snyder*, 472 U.S. 634, 645 n.6, 105 S. Ct 2874, 2881 n.6

(1985) ("The state code of professional responsibility does not by its own terms apply to sanctions in the federal courts. Federal courts admit and suspend attorneys as an exercise of their inherent power; the standards imposed are a matter of federal law.").

The bankruptcy court's reliance on state laws governing attorney ethics should come as no surprise to DBG given the Bankruptcy Code's express reference to "applicable law" in defining and, thus, determining who may be employed as an "attorney." More generally, incorporation of state law as a federal rule of decision in this area is sensible given the states' traditional hegemony over the regulation of the attorney-client relationship and the fact that "[t]he uniform first step for admission to any federal court is admission to a state court." *Snyder*, 472 U.S. at 645 n. 6, 105 S. Ct at 2881 n.6; *see also* LR 83.1(a) (W.D. Ky.) (requiring membership in Kentucky bar as condition of admission to federal bar) and LR 83.2(a)(3) (attorneys who seek admission *pro hac vice* must consent "to be subject to the jurisdiction and rules of the Kentucky Supreme Court governing professional conduct"). It would be anomalous for a bankruptcy court to approve the employment of an attorney to represent a committee in the bankruptcy court if that attorney were not permitted to practice in that same tribunal.

The Panel finds that the bankruptcy court properly looked to the Kentucky Rules for guidance in exercising its discretion to approve DBG's employment, or not, under § 1103(b), after the Debtor challenged DBG's qualifications on state law grounds. Whether the bankruptcy court abused its discretion in applying KRPC 1.9, however, requires a separate analysis.

As noted above, the bankruptcy court relied largely on KRPC 1.9 governing conflicts of interest between an attorney and a former client, and the remedies available to the former client. That rule states in relevant part:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

KRPC 1.9(a). The bankruptcy court also cited the Sixth Circuit's three-part test for determining whether grounds for disqualification exist, which as it noted, tracks Rule 1.9. (Op. at 4–5 citing

*Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir.1990).) In *Dana Corp.*, the Sixth Circuit articulated the following test for disqualification:

> (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification.

*Dana Corp.*, 900 F.2d at 889 (citing *City of Cleveland v. Cleveland Elec. Illuminating*, 440 F. Supp. 193, 207 (N.D. Ohio 1976), *aff'd*, 573 F.2d 1310 (6th Cir. 1977), *cert. denied*, 435 U.S. 996, 98 S. Ct. 1648 (1978)).

A. Prior Relationship

Regarding the first prong of the test under *Dana Corp.* and KRPC 1.9, the bankruptcy court found: "Here it is clear that an attorney-client relationship previously existed between Ms. Howlett, an insider of the Debtor, and [DBG]." (Op. at 5.) The bankruptcy court did not delve into this prong any further. While Ms. Howlett is the party who had a prior relationship with DBG, she is not the party who sought disqualification; rather, the Debtor filed the objection to DBG's employment. Courts are generally split on whether non-clients have standing to seek opposing counsel's disqualification, though many recognize standing upon a non-client's showing of particular injury. *See Ambush v. Engelberg*, 282 F. Supp. 3d 58, 63–64 (D.D.C. 2017) (collecting cases). The non-client's particular injury in this case is assumed rather than established. Relatedly, neither the bankruptcy court nor Debtor have cited any authority for the bankruptcy court's seeming inference that under the circumstances Ms. Howlett and the Debtor are the same party. The bankruptcy court concluded that "[h]ere, the client does not consent and objects to the representation." (Op. at 4.) This statement, however, is without factual support: the former client, Lisa Howlett, did not file an objection to DBG's employment, nor did she file any sort of affidavit. The only support for the finding that she objected is the Debtor's attorney's statement to that effect during the hearing and in briefing.[9]

---

[9]Ironically, if Debtor's counsel were doing the insider's bidding, counsel's disinterestedness might itself be an issue.

Under state and federal law, a client's choice of counsel, even in a civil matter, merits respect and deference from the court. *Marcum v. Scorsone*, 457 S.W.3d 710, 718 (Ky. 2015) (because a litigant has a right to counsel of his or her choice, counsel should not be disqualified merely for an appearance of impropriety); *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988) (While motions to disqualify are legitimate and necessary to protect the integrity of judicial proceedings and the ethics of the bar, they can also be abused as a "potent weapon" providing the "ability to deny one's opponent the services of capable counsel" ); *Official Unsecured Creditors Comm. of Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp.* (*In re Valley-Vulcan Mold Co.*), 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999) ("[T]he party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified," because "[a]lthough a party has no right to specific counsel, 'a party's choice of counsel is entitled to substantial deference.'"), *aff'd*, 5 F. App'x 396 (6th Cir. 2001). Given Debtor's burden of proof, and the interests at stake, the mere assertion by Debtor's attorney that a third party (insider Lisa Howlett) objects to DBG's representation of the Committee is not sufficient evidence, even assuming she did. *Cf. Marcum*, 457 S.W.3d at 718 (under Kentucky Rules, trial courts must hold evidentiary hearings to resolve disqualification questions).

B.  Subject Matter

The second prong of the test under *Dana Corp.* and KRPC 1.9 requires the court to determine if the subject matter of the two representations is substantially related. For this part of the test, the bankruptcy court consulted the official commentary to the KRPC, which states, "matters are substantially related . . . if they involve the same transaction or legal dispute or if there is otherwise a substantial risk that confidential factual information as would have normally been obtained in the prior representation would materially advance the client's position in the subsequent matter." (Op. at 5 citing KRPC 1.9 (cmt 3).) The bankruptcy court noted that "[t]here is no need of a commonality of legal claims or issues." (*Id*.) Rather, "[t]he court must determine the type of information [to which] the potentially conflicted attorney would have been exposed[.]" (*Id*. citing *Bowers*, 733 F.3d at 652; KRPC 1.9 (cmt 3).)

The bankruptcy court held that the type of information that DBG would have had access to while conducting estate planning, including the preparation of a buy-sell agreement affecting Ms. Howlett's interest in the Debtor, would include "information about Debtor and its assets and business practices[.]"  (Op. at 6.)  The bankruptcy court determined that this would include confidential information "related to the confirmation issues that typically involve detailed and proprietary information of Debtor." (*Id*.)  Neither Debtor nor the bankruptcy court, however, gave any examples of what proprietary information might be at stake.  Moreover, the bankruptcy court did not explain why Debtor would not be required to fully disclose this type of information as part of the chapter 11 bankruptcy process in any event.  It is fair to say that the bankruptcy court's conclusions on the "subject matter" aspect of KRPC 1.9, based on argument and inference rather than evidence, fall short of the strong showing required, again given the interests at stake in any disqualification controversy.

C.  Confidential Information

The bankruptcy court speculated that Glenview Health Care Facility's chapter 11 reorganization and confirmation of a new business plan using the same or substantially similar assets, with the same management and funding, "is not so different than what [DBG] tried to accomplish in 2016."  (Op. at 7.)  The Irving Declaration,[10] which stated that the services provided to Ms. Howlett were for estate planning and tax guidance, contradicts this conclusion.  Debtor's exhibits reference a buy-sell agreement but do not provide any level of detail or explanation as to what the proposed agreement entailed.  Those invoices do not contradict the Irving Declaration.  Nor has anyone contradicted DBG's assertion that a buy-sell agreement was not consummated.  Moreover, Debtor did not provide an affidavit or testimony from Lisa Howlett to contradict DBG's assertion that its prior representation of her created no conflict of interest.

---

[10]The Irving Declaration was the only testimonial evidence considered in connection with the contested matter, even though the bankruptcy court clearly considered "facts outside the record."  *See* Fed. R. Civ. P. 43(c), applicable by Fed. R. Bankr. P. 9017 ("When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions.").

The Committee met its initial burden of showing that DBG was eligible for employment pursuant to § 1103 because the firm did not represent an adverse party concurrently.  When the Debtor objected to DBG's employment under KRPC 1.9, it bore the burden of proving that DBG was not eligible.  The Debtor has not carried that burden.  Rather, the bankruptcy court relied on assumptions regarding the possibility of confidential information and a false equivalency between the Debtor and its insider.

A potential conflict alone does not mandate disqualification of counsel for the Committee.  *In re Universal Bldg. Prod.*, 486 B.R. at 662 (citing *In re First Jersey Secs., Inc.*, 180 F.3d 504, 509 (3d Cir. 1999) (stating that the Bankruptcy Code "mandates disqualification when there is an actual conflict, allows for it when there is a potential conflict, and precludes it based solely on an appearance of a conflict.")).  As the Kentucky Supreme Court observed when rejecting the appearance of a conflict as a basis for disqualification:

> Disqualification under that standard is "little more than a question of subjective judgment by the former client."  SCR 3.130–1.9 Sup. Ct. Cmt. 5.  In essence, all the former client has to do is claim discomfort with the subsequent representation to create the appearance that something untoward is going on and thus that there is an appearance of impropriety.  Moreover, "since 'impropriety' is undefined, the term 'appearance of impropriety' is question-begging."  *Id.*  Even if impropriety is the same as an actual conflict, there should be something more substantive than just a possible conflict before disqualification takes place.

*Marcum*, 457 S.W.3d at 717.  Here, the bankruptcy court disqualified DBG not based on an actual conflict at the behest of a former client, but on a potential conflict at the behest of a company in which the former client had a 50% equity stake, and did so on a thin record.

### III.     Kentucky Rule of Professional Conduct 1.10

DBG contends that the bankruptcy court compounded its error by failing to consider an exception to disqualification available under the Kentucky Rules of Professional Conduct, asserting that most of the attorneys who had represented Ms. Howlett were no longer with the firm, and that any remaining attorneys would be "walled off."  The bankruptcy court rejected the suggestion that screening off the attorneys would resolve the possible conflict.

The bankruptcy court cited the "rule of imputed disqualification" which charges all lawyers with the conflicts of their colleagues within a firm. The bankruptcy court noted that the rule presumes that confidential information about clients is shared or generally available to all lawyers in a firm. Accordingly, the bankruptcy court held that "[t]he screening procedures proposed by [DBG] with respect to its attorneys who formerly represented M[s]. Howlett are insufficient to overcome this presumption of shared confidences." (Op. at 7.)

DBG asserts that the bankruptcy court erred by failing to consider the applicable exception found in Kentucky Rule of Professional Conduct 1.10(d), which states:

> (d) A firm is not disqualified from representation of a client if the only basis for disqualification is representation of a former client by a lawyer presently associated with the firm, sufficient to cause that lawyer to be disqualified pursuant to Rule 1.9 and:
>
> (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no specific part of the fee therefrom; and
>
> (2) written notice is given to the former client.

KRPC 1.10. DBG asserts that none of the attorneys who previously represented Ms. Howlett was in the Bankruptcy & Restructuring Practice Group, and that given the firm's size it is able to screen the attorneys who did work with Ms. Howlett on her estate planning from involvement in the bankruptcy case. DBG submitted an affidavit to this effect, which no one refuted. Moreover, DBG contends that the bankruptcy court did not articulate a reason why Rule 1.10(d) is not applicable in the present case. The Panel agrees that the bankruptcy court should address the issue on remand.

The bankruptcy court gave no substantial reason for not applying KRPC 1.10 under the circumstances. Indeed, the rule directly addresses, and rejects, the imputed disqualification upon which the bankruptcy court premised its decision to disqualify DBG. The court erred in not applying the rule or justifying its failure to do so.

**CONCLUSION**

The Panel appreciates the bankruptcy court's desire to foreshadow its concerns about DBG's risk of spending time on the case only to be denied compensation for lack of disinterestedness, and understands the desire to economize by limiting the expense and delay of protracted hearings on an employment issue collateral to the main reorganization proceedings. The task of balancing scarce resources and important interests—a staple of a bankruptcy judge's steady diet—is never easy.

Nevertheless, both state and federal courts jealously guard the attorney-client relationship and that solicitude extends to a committee's choice of counsel in bankruptcy. When the bankruptcy court countermanded that choice based on an erroneous application of the law and an inadequate record, it abused its discretion under § 1103. Accordingly, the Panel will VACATE the bankruptcy court's Order Denying the Committee's Application to Retain and Employ Bingham Greenebaum Doll LLP as Counsel and REMAND the matter for further proceedings consistent with today's decision.