NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>EARLE'S CUSTOM WINES, INC., dba<br>Yuma's Main Squeeze,<br>          Debtor. | BAP No. AZ-23-1050-LCF<br><br>Bk. No. 0:17-bk-00797-SHG |
| JIM D. SMITH,<br>          Appellant,<br>v.<br>UST-UNITED STATES TRUSTEE,<br>PHOENIX,<br>          Appellee. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Scott H. Gan, Bankruptcy Judge, Presiding

Before: LAFFERTY, CORBIT, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Jim D. Smith, trustee of the chapter 7[1] estate of Earle's Custom Wines,

Inc., was employed to serve as attorney for the estate with the approval of

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

the bankruptcy court. Smith later filed a fee application seeking attorney's fees of $10,980, incurred during his administration of the estate. Based on the U.S. Trustee's ("UST") opposition to the fee application and the bankruptcy court's independent analysis of the requested fees, the bankruptcy court reduced the fees to $3,360. Smith appeals the reduction. Seeing no error, we AFFIRM.[2]

## FACTS[3]

### A.      The bankruptcy case and Smith's activities

Earle's Custom Wines, Inc. filed its chapter 7 petition on January 27, 2017. Smith was appointed trustee. Two weeks into the case, Smith filed a two-page application to have himself appointed "attorney for the estate." Concurrent with the application, Smith filed a one-page declaration which simply stated that he was a sole practitioner and had no conflicts. There being no objections, the application was approved.

On February 17, 2017, Smith filed a two-page "Trustee's Application for Authority to Sell Personal Property at Private Sale." In the application, Smith requested permission to sell the "Remaining Restaurant and Bar Equipment located in leased premises" which he estimated to have a value

---

[2] This appeal was concurrently heard with three others: (1) *Smith v. UST (In re Rivera)*, BAP No. AZ-23-1047-LCF; (2) *Smith v. UST (In re Figueroa)*, BAP No. AZ-23-1048-LCF; and (3) *Smith v. UST (In re Banghart)*, BAP No. AZ-23-1049-LCF. These companion appeals are the subject of their own separate written decisions.

[3] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceedings. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

of $8,000 to $10,000. The application did not identify a buyer, nor did it include a declaration or other evidence. As there were no objections, the court approved it. About a month later, Smith filed a report of the sale indicating he sold the equipment for $8,000.

On July 25, 2017, Smith filed a three-page adversary complaint against Pinnacle Capital Partners, LLC seeking to avoid its alleged security interest in a "table tap" wine dispenser on the basis that Pinnacle did not perfect its interest by filing a UCC-1 (the "Pinnacle Litigation"). When Pinnacle failed to answer the complaint, Smith filed a two-page motion for entry of default, a two-page "statement of facts," and a default judgment which the court entered on September 25, 2017.

Also on July 25, 2017, Smith filed a four-page adversary complaint against Yuma Industrial Buildings, LLC, the Debtor's storage facility, asserting that it refused Smith access to the premises and "may have moved, sold or otherwise disposed of the business property which was stored at the leased Warehouse Space" (the "Yuma Storage Facility Litigation"). This matter was settled a few months later for $4,000, which settlement the court approved.

Smith, in his capacity as trustee, addressed a number of other issues typical of a commercial bankruptcy including the administrative rent with the landlord, change of locks, release of an alleged landlord's lien, a security deposit issue, and investigation of potential recovery of other assets.

The court clerk filed and served a Notice of Bar Date, and ultimately a single proof of claim was filed on November 19, 2017, by an unsecured creditor for $2,621.40.

## B.    The fee applications and UST's objections

On December 23, 2019, Smith filed an "Application for Allowance of Administrative Expense – and – Rule 2016 Disclosure." The application sought fees of $10,350 for 34.5 hours of work at $300 per hour and $26 for costs.[4] Smith attached his billing statements which had category titles for each entry but there was no summary of the time for each category, in the application or the billing statements, and no correlation of the fees requested to the value received for the estate. The application noted that if there were no objections, Smith would reduce the amount of fees requested to $8,000.[5] There was no declaration to support the application.

The UST timely objected to Smith's application, arguing that there was improper lumping of time on specified time entries, and that Smith should not be paid .8 hours for drafting and filing his own employment application. The UST also objected to Smith's proposed reduction in fees if there were no objections to the fee application, arguing that the adjustment was an attempt to circumvent the Supreme Court's decision in *Baker Botts*

---

[4] These fees are separate from, and in addition to, Smith's right to a commission as a trustee under § 326(a), estimated by the UST to be $2,078 based on Smith's Trustee Final Report ("TFR").

[5] It appears from the TFR that Smith had about $9,200 in his trust account at this time.

*LLP v. ASARCO LLC,* 576 U.S. 121, 131 (2015), that an attorney may not be paid for efforts responding to objections to the application.

There was no further activity on the fee application until approximately nine months later, in October 2020, when Smith filed an amended fee application which sought fees of $10,980 (a $630 increase above the first application) for 36.6 hours (a 2.1 hour increase in time) at $300 per hour (the "Amended Fee Application"). The Amended Fee Application provided more detail in response to the UST's lumping objection and removed the voluntary reduction in fees. It replaced the 2.0 hour entry for preparation of the original fee application with a 2.5 hour entry for preparation of the amended application. There was no other explanation why the total time increased by 2.1 hours.

The UST objected again that the application still had inappropriate lumping and that the application sought attorney's fees for "the performance of . . . trustee's duties." The UST specifically identified the following categories of entries as inappropriate for reimbursement, arguing the efforts were part of the trustee's duties rather than an attorney's duties:

1. Resolution of Administrative Rent Claim;

2. City of Yuma Street Sidewalk Lease Security Deposit Issue;

3. P.O. Sale Ownership Issue;

4. Landlord's Lien/Building Fixtures Issue;

5. Access to Leased Premises & Landlord's Lien;

6. Recovery of Wine Making Equipment;

5

7. A.P.S. Advance Deposit Matter; and

8. Business Equipment Recovery & Sale.

The objection did not specify the amount of fees requested for each of the above categories but noted the specific time entries on Smith's billing statements to which it objected. The UST generally did not object to the entries relating to preparation or filing of pleadings in the two adversary proceedings.

Shortly thereafter, the bankruptcy clerk filed a preprinted Memorandum to Case Trustee noting that there had been no activity in the case for more than one year and that "it is unclear as to whether this case is continuing to be administered or whether an appropriate final report should be filed and the case closed."

## C.    The hearings on Smith's Amended Fee Application

Neither Smith nor the UST timely responded to the case memorandum; rather seven months later the UST filed a "request for status hearing regarding Memorandum to Case Trustee and United States Trustee's Objection to First Amended Application for Allowance of Administrative Expenses – Attorney's Fees," noting that there was no activity in this case and that the Amended Fee Application was pending. Thereafter, the bankruptcy court set a status hearing which was heard on August 4, 2022.[6]

---

[6] This was a combined hearing for all four of the cases for which the Panel heard argument on September 28, 2023.

At the hearing, Smith suggested that the bankruptcy court simply rule on the outstanding fee application and the objection without further hearings. The court invited Smith to file a response to the UST's objection but Smith demurred. The court then stated on the record that the matter was submitted.

On September 8, 2022, the bankruptcy court entered its order requiring simultaneous further responses from Smith and the UST and setting a further hearing on the fee application. In its order, the court made tentative findings including that six entries on Smith's billing statements "**may be compensable for attorney's fees**, provided there is further explanation from Mr. Smith[,]" suggesting that the remainder of the time would be disallowed. (Emphasis added). The court ordered Smith to explain the need for the "research" entries and to "de-lump" each entry so it could "accurately determine the reasonableness of the fees requested." The court instructed Smith to respond to the UST objections as well as its tentative findings.

As to the UST, the court ordered the UST to file a reply "describing its procedure for identifying such violations when it reviews fee applications and whether it uses the same procedure and scrutiny to review fee applications by independent counsel as it does to review those by trustees also serving as attorneys for the estate."

Smith's response noted that his "legal efforts" resulted in a recovery for the estate of $5,250 (net) for the sale of the equipment,[7] $4,000 in the Yuma Storage Facility Litigation, and $800 in the Pinnacle Litigation. Smith offered a cursory response regarding the research he undertook but repeated his position that all his time billed was for services "routinely performed" by attorneys employed by chapter 7 trustees. The response further complained that the UST was not objecting to the fees requested by trustee Lawrence Warfield's[8] attorney who "was paid over $800,000 in the Year 2021 . . . for representing Chapter 7 Case Trustees in cases where issues similar to this Case were made and litigated."

Separately Smith filed a "Notice of Filing 'De-Lump' Time Entries as Required by 9/8/2022 Court Order" in which he annotated in handwriting his "lumped" time entries showing how much time was spent on the multiple portions of each entry.

The UST's response summarized its process for reviewing chapter 7 fee applications.

On November 1, 2022, the bankruptcy court conducted a second hearing and advised the parties that its review of the supplemental responses left it with questions and further concerns directed at both parties. After lengthy colloquy between the court and the parties, the court

_____

[7] As noted, Smith sold the equipment for $8,000 and later paid the landlord $2,750 for administrative rent for a net of $5,250.

[8] Apparently the only other chapter 7 trustee in the Yuma, Arizona area.

invited the parties to file further supplemental pleadings regarding its specific concerns. The court requested "case law" from the parties that differentiated a trustee's efforts as trustee and those of trustee's counsel. The court stated that it wished to better understand the UST's position on that issue so that it could "more clearly set a standard . . . to apply across the board." As to Smith, the court asked him to "take a hard look" at his time entries as some appeared to be administrative overhead expense. Over Smith's objection, the court set an evidentiary hearing in December.

Subsequently, the UST filed a further memorandum which essentially repeated its earlier recitation of its procedures regarding fee applications. It attached numerous exhibits containing turnover motions filed by trustees without counsel arguing that this type of turnover action is routinely done by trustees without counsel.

Smith filed a list of thirty-four "recent" cases purporting to establish that "the Attorney for the Chapter 7 Trustee was compensated (without objection) for services which the U.S. Trustee now claims are services that must be provided by the Chapter 7 Trustee, not an Attorney." The list contained some details about each case and a "[d]escription of the work" but contained no analysis or statement by Smith establishing a direct relationship between those cases and his case nor showing any relevance to the tasks Smith performed.

On December 20, 2022, the bankruptcy court conducted an evidentiary hearing at which Smith testified and was cross-examined.

Smith testified summarily that "this was a difficult business case." He noted that it was a no-asset case from the beginning with numerous issues which his efforts resolved. On cross-examination, Smith continued to insist that he hired himself to do the legal work because "legal issues were presented" and that all his time represented work typically performed by a trustee's attorney, not the trustee.

**D.     The bankruptcy court's ruling on the Amended Fee Application**

The bankruptcy court issued its Ruling on United States Trustee's Objection to Jim Smith's Attorney Fee Application on February 21, 2023 (the "Memorandum"). In the Memorandum, the court specifically ruled on each line item in Smith's timesheets, about 120 entries in total. The court concluded that twelve of the line items were compensable as attorney's fees and the remainder were not. The most common reason for the disallowance was that the entries were "tasks routinely performed by trustees without counsel assistance" or because Smith "failed to demonstrate" how the efforts in the time entry "required legal expertise." The court separately categorized forty-four entries for the two adversary proceedings and allowed one entry for the Yuma Storage Facility Litigation (.3 hours for research re service on a foreign LLC), and four for the Pinnacle Litigation (2.3 hours in total). As to the 3.3 hours for the employment and fee applications, the court allowed that time, stating that the time was compensable "as it is routine in this district for attorneys for the estate to request compensation for preparing . . . the applications." The court

allowed 5.3 additional hours for various other tasks it deemed appropriate for counsel for the trustee. It disallowed everything else.

The bankruptcy court concluded that the disallowed "services were neither reasonable nor necessary." It stated, "Smith . . . failed to demonstrate how any of those services performed involved legal expertise beyond the duties routinely performed by trustees without counsel assistance." It further noted that the reduction "is warranted based on [the court's] review for reasonableness and necessity and the anticipated return to creditors in this case." The court reduced the attorney's fees requested from $10,980 to $3,360.

Smith timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion in reducing the trustee's attorney's fee request from $10,980 to $3,360?

## STANDARDS OF REVIEW

We review for abuse of discretion a bankruptcy court's order awarding compensation to an estate professional under § 330. *Hopkins v. Asset Acceptance LLC (In re Salgado-Nava)*, 473 B.R. 911, 915 (9th Cir. BAP 2012). We will not disturb a bankruptcy court's award of attorney's fees "absent an abuse of discretion or an erroneous application of the law." *In re*

11

*Nucorp Energy, Inc.,* 764 F.2d 655, 657 (9th Cir. 1985); *see also Dawson v. Wash. Mut. Bank F.A. (In re Dawson),* 390 F.3d 1139, 1145 (9th Cir. 2004).

Factual findings made in the course of awarding compensation are not disturbed unless clearly erroneous. *See Friedman Enters. v. B.U.M. Int'l, Inc. (In re B.U.M. Int'l, Inc.),* 229 F.3d 824, 830 (9th Cir. 2000). A finding is not "clearly erroneous" unless, based on the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948).

We may affirm on any basis supported by the record. *Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 211 (9th Cir. BAP 2013).

## DISCUSSION

In his opening brief, Smith cites three specific issues to be resolved in this appeal: 1) were the bankruptcy court's conclusions disallowing the fees "legally correct?"; 2) did the bankruptcy court err in finding that it was Smith's "burden of proof to establish each and every time entry was compensable and that the objecting party (U.S. Trustee) did not have any burden of proof?"; and 3) did the UST provide any evidence to support its position?[9]

---

[9] Smith does not argue for reversal on the basis that the UST targeted him by objecting to his fee application while at the same time not objecting to similar fee applications by other trustees. That issue is therefore waived and not discussed herein. *Maloney v. T3Media, Inc.,* 853 F.3d 1004, 1019 (9th Cir. 2017) (issue not argued in briefs is waived).

There are reasons why a court of appeals defers to the trial court, especially when reviewing attorney's fee applications. Fundamentally, the Bankruptcy Code and cases interpreting § 330 make clear that the trial court has an independent obligation, whether a party objects or not, to review, critique, and reduce the fees requested if necessary using the given standards. *See In re Crown Orthodontic Dental Grp.,* 159 B.R. 307, 309 (Bankr. C.D. Cal. 1993); s*ee also Law Offices of David A. Boone v. Derham-Burk (In re Eliapo),* 298 B.R. 392, 399 (9th Cir. BAP 2003) (stating that the court has "wide discretion in determining reasonable and necessary fees under § 330(a)"), *aff'd in part, rev'd in part and remanded by* 468 F.3d 592 (9th Cir. 2006).[10]

---

[10] Section 330(a) states in relevant part:
> (a)(1) [The bankruptcy court may award] –
> (A) reasonable compensation for actual, necessary services rendered by the . . . attorney . . . employed by [the trustee];
> . . .
> (2) The court may . . . award compensation that is less than the amount of compensation that is requested.
> (3) In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is

The basis for the extremely deferential standard is that the bankruptcy court is uniquely in the best position to assess the amount of work done, its contribution to the administration of the estate, and its benefit to the stakeholders; and thus, to determine the appropriate amount of fees. *See Phillips v. Gilman (In re Gilman),* CC-18-1101-STaL, 2019 WL 3074607, at *4 (9th Cir. BAP July 12, 2019) ("It is uniquely the province of the bankruptcy court to determine the level of review and the basis for critique in fee review, and a reviewing court should defer as thoroughly to that decision by the bankruptcy court as it would to any other decision concerning reasonableness of fees[.]") (citations omitted), *aff'd,* 836 F. App'x 511 (9th Cir. 2020). The skill requisite to achieve those results may be much more obvious in mid-size or larger cases of some complexity than they may be in cases such as the one before this Panel where there is very little activity and the court simply does not have the same opportunity to assess the nature of the work or whether it was actually necessary.

These cases represent exactly that dilemma. While we do not suggest that in every small case the court should schedule a hearing to probe the

---

board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

      (4)(A) . . . the court shall not allow compensation for—

      (i) unnecessary duplication of services; or

      (ii) services that were not—

      (I) reasonably likely to benefit the debtor's estate; or

necessity of employing counsel, neither do we accept the proposition that the court must rely on the general assertion by the trustee in the employment application regarding the need for attorney assistance as establishing that any particular services actually rendered required the expertise of counsel.

The Bankruptcy Code requires the trustee to do his or her own work; this requirement sometimes creates a tension in small cases like these between the work that should be done by the trustee and that which genuinely requires the assistance of an attorney. Therefore, it is not surprising that the only meaningful review of the fees in small cases occurs at the end of the case, and may frequently be predicated on an objection, or the court's independent concern, that the services for which compensation is requested do not rise to the level of tasks for which the expertise of an attorney was required.

A.   **The bankruptcy court properly ruled that Smith had the burden of proof to establish that his requested compensation complied with the Bankruptcy Code.**

Smith's principal argument is that the party objecting to an application for compensation has the burden of proof to show that fees are unreasonable or unnecessary, citing *Koncicky v. Peterson (In re Koncicky)*, BAP No. WW-07-1170-MkPaJ, 2007 WL 7540997 (9th Cir. BAP Oct. 19, 2007). We agree that a party objecting to the fees must establish that the

_____

(II) necessary to the administration of the case.

15

fees are unreasonable. But we do not agree that the burden of the objecting party somehow relieves the professional from its burden to establish that its requested fees are reasonable in the first instance. In *Koncicky*, the debtor objected to the Trustee's Final Report including the requested fees and costs. The bankruptcy court overruled the objection on the basis that the debtor offered no factual or legal basis for reversal. *Id.* at *1. The Panel in *Koncicky* noted that the record contained ample evidence to support the fee award and affirmed the ruling.

Neither *Koncicky* nor any other authority creates a presumption in favor of the trustee which can only be overcome by objection to the fee application. The Bankruptcy Code permits a court to award fees to the trustee as attorney but "only to the extent that the trustee performed services as attorney . . . for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney . . . for the estate." *See* § 328(b).[11] The court is required to find that the fees are reasonable and only for services actually and necessarily rendered. *See* § 330(a). The Bankruptcy Code requires the court to "tak[e] into account all relevant factors" including whether the

---

[11] Section 328(b) states in relevant part:

(b) If the court has authorized a trustee to serve as an attorney . . . for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney . . . only to the extent that the trustee performed services as attorney . . . for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney . . . for the estate.

16

services were "beneficial at the time at which the service was rendered" and "reasonably likely to benefit the estate." § 330(a)(3) and (4).

Smith asks the Panel to find that his fees were appropriate solely because the UST did not establish that the fees were inappropriate. That standard would stand the statute on its head. The burden is on the party requesting allowance of the fees to establish that the requirements of the Code have been met. *See In re McKenna,* 93 B.R. 238, 242 (Bankr. E.D. Cal. 1988); *In re Gary Fairbanks, Inc.,* 111 B.R. 809, 811 (Bankr. N.D. Iowa 1990) ("The burden is on the trustee to demonstrate that services for which attorney's fees are sought are not duties generally performed without the assistance of counsel."). In *In re King*, 546 B.R. 682, 697 (Bankr. S.D. Tex. 2016), the court stated, "[w]here insufficient explanatory information is provided for determining the precise nature of the services rendered, the [C]ourt is compelled to determine that the services are not compensable as legal services." (Citation omitted) (alteration in original).

Smith also obliquely complains that, even if it is his burden of proof, he should not have to support "each and every time entry." We disagree. Section 330(a) does not modify the professional's or the court's duties based on the size of the time entry. Smith cites no authority to support his position.

In the last analysis, the bankruptcy court reduced the requested attorney's fees, as it is expressly permitted to do in § 330(a)(2), because Smith failed to offer sufficient evidence that the fees were reasonable and

17

necessary under the requirements of § 330(a).[12] There is no erroneous application of the law on this issue.

**B.    The bankruptcy court did not abuse its discretion in disallowing the requested compensation.**

**1.    There was insufficient evidence to permit the bankruptcy court to find that the services were reasonable and necessary.**

Section 330 requires that an applicant establish that the fees incurred were reasonable and necessary as the bankruptcy court correctly ruled. Smith's application simply does not demonstrate adherence to that standard.

Smith asserts to the Panel that his "[d]eclaration and testimony" in support of the Amended Fee Application established that all of his time entries "were legal services, which are routinely performed by Attorneys employed in Chapter 7 Cases . . ." However, Smith's Amended Fee Application contained no separate declaration ascribed under penalty of perjury supporting the proposition that the fees he incurred were reasonable and necessary within § 330. And his response to the UST objection contained his short declaration which simply concluded that "in [his] legal opinion," the services performed were "not duties which are required to be performed by a chapter 7 Trustee[.]" He offered no

---

[12] We note that the bankruptcy court referenced in its Memorandum that, for each time entry disallowed, the UST objection was sustained, even though the UST did not specifically object to some of the time entries. Because the bankruptcy court is required to make an independent determination of the allowability of each entry, we treat any error as harmless.

evidentiary support for that position beyond his bare conclusory statements. His testimony at the evidentiary hearing was no more than that; a few conclusory comments of the work he did and his belief that he should be paid for it.

In his opening brief, Smith set forth ten pages of "specific examples of disallowance where the findings and conclusions are illogical, implausible and without support in the record." These "examples" and the related explanations were not included in Smith's pleadings to the bankruptcy court nor in his testimony at the evidentiary hearing, certainly not with the specificity laid out in the brief.

Smith failed to provide any such specificity to the bankruptcy court and thus the factual arguments he seeks to make now could not be evaluated by the court, and it is improper for Smith to raise these factual issues before this Panel. "A litigant may waive an issue by failing to raise it in a bankruptcy court." *Mano-Y & M, Ltd. v. Field (In re Mortg. Store, Inc.)*, 773 F.3d 990, 998 (9th Cir. 2014). "There is no bright-line rule to determine whether a matter has been properly raised. A workable standard, however, is that the argument must be raised sufficiently for the trial court to rule on it." *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir. 1989) (internal citations omitted).

The bankruptcy court's ruling does not leave us with a definite and firm conviction that a mistake has been committed.

**2.** **There was insufficient evidence to permit the bankruptcy court to find that the disallowed services required special expertise.**

The UST's main objection to the Amended Fee Application is that the services performed by Smith purportedly as the trustee's attorney were services which the trustee would generally undertake. Section 328(b) unambiguously requires that the fees awarded to an attorney representing a trustee in a bankruptcy case **must not include** any time for "performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney . . . for the estate."

Section 704 sets forth the trustee's duties which include collecting and reducing to money the property of the estate, investigating the financial affairs of the debtor, examining the proofs of claim with a view toward objecting to allowance, and preparing the trustee's final account. The role of counsel for the trustee is to perform those tasks that require special expertise beyond that expected of an ordinary trustee. "Only when unique difficulties arise may compensation be provided for services which coincide or overlap with the trustee's duties and only to the extent of matters requiring legal expertise." *Ferrette & Slater v. U.S. Tr. (In re Garcia),* 335 B.R. 717, 725 (9th Cir. BAP 2005) (quotation marks and citation omitted). Attorneys must therefore present sufficient evidence including billing records with enough detail to establish that the services rendered went beyond the scope of the trustee's statutory duties and involve unique difficulties. *Id.* at 727. The cryptic descriptions in the billing statements

provoked the court's concern about Smith's dual role in this case. Even the bankruptcy court's entreaties to Smith before the evidentiary hearing did not prompt Smith to adequately explain why the tasks required attorney expertise. Smith's failure to adequately explain the context of the time entries prevented the court from making the required findings in Smith's favor.

Many of the line entries in Smith's billing statements are trustee's duties; that cannot be reasonably disputed. Such time entries include, for example, meeting with the landlord to change the locks, discuss the delinquent rent and other issues (.9); meeting with the landlord to resolve administrative rent (.7); discussion with the utility company re the security deposit (.9); meet with Fred Earle regarding equipment and the storage facility (1.0); and negotiations with the buyer of the equipment (1.3) which are all duties similar to the types of duties typically performed by trustees. Smith offers no explanation about why those tasks would require expertise beyond that of the usual chapter 7 trustee.

In addition, many of the line entries are tasks usually completed by office staff. Smith's billing statements include numerous entries of preparing affidavits of service and notices of various types, reviewing the docket, serving copies of various pleadings and documents. These tasks do not require the special expertise of a bankruptcy attorney with forty years' experience. Smith's failure to concede even a single entry undercuts his sincerity in insisting that none of the work was trustee work.

There is nothing in the record that would support a finding that the efforts disallowed by the bankruptcy court required expertise beyond that expected of an ordinary trustee. It is not clear error to find that these and similar entries are efforts Congress intended to be undertaken by the trustee and compensated under § 326(a).

3. **Section 330 implicitly requires counsel to exercise billing discretion; therefore, the bankruptcy court properly considered the anticipated return to creditors standard when disallowing the time and fees.**

Beyond the literal language that the services must be reasonable and necessary to be compensable, "[p]rofessionals have an obligation to exercise billing judgment." *Lobel & Opera v. U.S. Tr. (In re Auto Parts Club, Inc.)*, 211 B.R. 29, 33 (9th Cir. BAP 1997). Having an attorney perform a task does not compel a finding that the fees were necessary per se, and we implicitly rely on the trustee to exercise appropriate discretion before burdening the estate, and in particular a small estate, with attorney's fees where the task might well have been performed by the trustee.

The "actual and necessary" prong of § 330(a)(1) requires the trustee to consider the potential for recovery and balance the effort required against the results that might be achieved. *See Unsec. Creditors' Comm. v. Puget Sound Plywood, Inc. (In re Puget Sound Plywood, Inc.)*, 924 F.2d 955, 961 (9th Cir. 1991) ("Absent unusual circumstances, an attorney must scale his or her fee at least to the reasonably expected recovery.").

Smith offered no explanation as to why having an attorney do many of the tasks was required to monetize what was obviously going to be a simple and nominal recovery for the estate. Smith offered no evidence that he considered the potential for recovery and did any balancing assessment before incurring attorney's fees. That was his burden, and we cannot second guess the bankruptcy court's finding that the expertise of an attorney was not necessary. Smith's blind insistence that it was compensable professional time because he said so is not sufficient to satisfy the requirements of the Bankruptcy Code.

## CONCLUSION

For these reasons set forth above, we AFFIRM.